804 So.2d 103 (2001)
Wendy GILLEY
v.
PARKVIEW BAPTIST SCHOOL.
No. 2000 CA 1937.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
Rehearing Denied January 28, 2002.
Jack Patrick Harris, Baton Rouge, Louisiana, for Claimant/Appellee Wendy Gilley.
Kirk L. Landry, Baton Rouge, Louisiana, for Defendant/Appellant Parkview Baptist School.
BEFORE: GONZALES, KUHN, and CIACCIO[1], JJ.
*104 KUHN, J.
Employer-appellant, Parkview Baptist School, appeals an order by the Office of Workers' Compensation (OWC) in favor of claimant-appellee, Wendy Gilley, concluding claimant is entitled to Supplemental Earning Benefits at her Temporary Total Disability rate from the date of her last employment with the employer through trial and continuing. We reverse.
On January 5, 1999, claimant filed a disputed claim form with OWC averring entitlement to workers' compensation benefits. She alleged that on September 30, 1998, while in the course and scope of her employment at Parkview Baptist School, a large male student backed into her and caused her to injure her left knee. After employer filed an answer generally denying the claim, the matter proceeded to a trial on the merits. Although there were numerous contested issues at trial, on appeal the sole issue raised is whether OWC erred in concluding that claimant sustained her burden of proving an inability to earn 90 percent of her pre-injury wages to support the legal conclusion she is entitled to Supplemental Earning Benefits.
The record discloses, and the parties do not dispute, that the knee injury was an aggravation of a pre-existing condition. Dr. Gerard Murtagh, claimant's treating physician throughout this stage of her knee condition, related her post-September 1998 symptoms to the incident on the school premises. According to Dr. Murtagh, subsequent to September 1998, claimant was advised to refrain from walking, standing, climbing, stooping, bending or squatting. He noted an especial concern about her ability to engage in the "duty" component of her teaching position at Parkview Baptist School, which he described as assisting students in and out at the school as well as playground duties. Dr. Murtagh testified that although the physical restrictions were in claimant's best interest immediately after the September 1998 incident, claimant continued to work despite the pain. She utilized a knee immobilizer and crutches and, subsequently, a brace and cane. Dr. Murtagh stated in December 1998, claimant finally acquiesced to the fact that she could no longer perform the duties of the teaching position she held at Parkview Baptist School. And while his deposition testimony, submitted in lieu of his live appearance at the OWC hearing, is replete with statements by the physician that claimant pursue a more "sedentary career," he expressly explained:
We made a formal recommendation that, "You need to pursue a more sedentary career." That would either be the teaching profession without the duty component and perhaps being able to sit. You couldn't stand, walk, stoop, bend, climb, squat, et cetera. Maybe they could accommodate you working downstairs, these sorts of things. And if an employer could not make those accommodations, then she definitely would have to pursue an alternative form of employment. That was the sedentary restriction recommendation in December of '98.
If the factual finding of the trier of fact has an evidentiary basis, it must be affirmed on appeal unless manifestly erroneous or clearly wrong. See Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Thus, the OWC factual finding that claimant "is employable and is employable as a teacher" is supported by the evidence, as outlined above, and therefore is not manifestly erroneous.
*105 On appeal, appellant asserts OWC fell into error by requiring the employer to offer her a job before claimant has proven she is unable to earn 90 percent of her pre-injury wages to support her prima facie showing of entitlement to Supplement Earnings Benefits. We agree.
Louisiana Revised Statutes 23:1221, which sets forth when an employer is mandated to pay benefits, states in relevant part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
* * *
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis....
(c)(i) ... [F]or purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment ... or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment... which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
In order to recover Supplemental Earnings Benefits, claimant must first prove by a preponderance of the evidence an inability to earn wages equal to 90 percent or more of the wages he earned before the accident. Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132. And it is only after such a showing that the burden of proof shifts to the employer who, if he wishes to contend that claimant is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that claimant is physically able to perform a certain job and that the job was offered to claimant or the job was available to claimant in his or the employer's community or reasonable geographic region. Id., 93-1304 at p. 5, 633 So.2d at 132-33.
The record is devoid of any evidence to support a finding that claimant is unable to earn wages equal to 90 percent or more of her pre-injury wages. And while vocational rehabilitation counselor, Glenn Hebert, opined that claimant was unemployable, reasoning that ethical *106 duties would require disclosure to a potential employer that claimant's treating physician has suggested a knee replacement is likely, and no employer would therefore hire her, by finding claimant employable, OWC clearly rejected that testimony. The rejection of the vocational rehabilitation counselor's testimony was not clearly wrong or manifestly erroneous based on the facts of this case.
Regardless of whether this court holds that claimant is required to show an inability to earn 90 percent of pre-injury wages in any type of sedentary position/occupation or, more narrowly, within the perimeters described by Dr. Murtagh within the teaching profession, claimant simply has offered no evidence to support such a finding. Thus, the burden of proving availability of a job within the medical restrictions placed on claimant never shifted to the employer.
OWC erred in concluding claimant is entitled Supplemental Earnings Benefits. The OWC order is reversed. All costs of this appeal are assessed against claimant, Wendy Gilley.
REVERSED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.