822 So.2d 72 (2002)
Devonna C. JOSEPH
v.
J.E. MERIT CONSTRUCTORS, INC.
No. 2001 CA 1666.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
Rehearing Denied July 30, 2002.
*73 James L. Maughan, Baton Rouge, Counsel for Devonna C. Joseph.
Kirk L. Landry, Baton Rouge, Counsel for J.E. Merit Constructors, Inc.
Before: WHIPPLE, FOGG, and GUIDRY, JJ.
GUIDRY, J.
Claimant appeals judgment denying her medical and indemnity benefits. For the following reasons, we reverse in part and remand.

FACTS AND PROCEDURAL HISTORY
The claimant, Devonna C. Joseph, was hired by J.E. Merit Constructors, Inc. (J.E. Merit) in October 1999 to work as a *74 general laborer at an Exxon facility located in Baton Rouge. On January 13, 2000, as she tried to avoid the spray of a power washer being used by a co-worker to clean the area where they were working, Ms. Joseph slipped and fell against the iron hitch of a nearby trailer, injuring herself. On the advice of a co-worker, she reported the incident to her foreman. The foreman escorted Ms. Joseph to the safety manager, who gave Ms. Joseph some medication and instructed her to go to another location and rest for the remainder of her shift. That evening, Ms. Joseph's pain grew worse and on the following day, she went to the emergency room of Our Lady of the Lake Regional Medical Center (OLOL) for treatment. The emergency room physician who examined Ms. Joseph diagnosed her as having sustained a lumbar contusion, prescribed pain medication and instructed her to skip a day of work.
On returning to work, Ms. Joseph was tested for drug and alcohol use and then taken back to OLOL to have some x-rays taken. Thereafter, J.E. Merit scheduled an appointment for Ms. Joseph with Dr. J. Thomas Kilroy, a board-certified orthopedic surgeon. Dr. Kilroy first examined Ms. Joseph on January 18, 2000. Although Dr. Kilroy determined that she had no real neurological defects, he, nonetheless, ordered some diagnostic tests and conservative treatment, based on her subjective complaints.
Sometime after being initially examined by Dr. Kilroy, but before being released from his care, Ms. Joseph resumed, for one day, her active work duties. Specifically, she was placed on fire or hole watch, which consisted of her holding a water hose similar in size to one carried by firemen, while watching for any sudden outbreaks of fire or flames. Ms. Joseph claimed that the water hose she was required to hold weighed as much as a gallon of milk and that, as a result of performing this duty, she suffered increased pain in her neck and shoulder, which she alleged was an exacerbation of the injuries she had previously sustained from her initial work-related accident. However, neither OLOL nor Dr. Kilroy listed any complaints of neck or shoulder pain or stiffness in their documentation of the patient's history.
In the meanwhile, on reviewing the diagnostic studies made of Ms. Joseph's back, Dr. Kilroy found no objective basis for Ms. Joseph's complaints. Nevertheless, he ordered that Ms. Joseph be maintained on a light-duty regimen for two additional weeks before fully resuming her full work duties. Ms. Joseph, disagreeing with this diagnosis by Dr. Kilroy, sought a second opinion from her family physician, Dr. Stan Mays.
Dr. Mays first examined Ms. Joseph for her alleged work-related injuries on January 26, 2000. His medical records reveal that during that initial examination, Ms. Joseph disclosed sustained stiffness in her neck and shoulder following the first accident, which elevated to actual pain following the fire-watch incident. Dr. Mays saw Ms. Joseph on one other occasion following her initial examination, at which time he referred her to a local orthopedist, Dr. Robert Nicholson, to follow-up on her complaints of pain in her lower back, neck and right shoulder.
Pursuant to Dr. Mays' referral, Ms. Joseph sought authorization to see Dr. Nicholson. Authorization was denied and Ms. Joseph filed a disputed claim for compensation based on this denial. In her petition, Ms. Joseph requested that the previously sought medical treatment be authorized and that she be granted a summary hearing and attorney's fees for bringing the action pursuant to La. R.S. 23:1121. J.E. Merit excepted to Ms. Joseph's petition asserting insufficient *75 citation, insufficient service of process, unauthorized use of summary proceedings, and improper cumulation of actions.
On April 14, 2000, a summary hearing was held pursuant to Ms. Joseph's motion, at the commencement of which, J.E. Merit agreed to authorize treatment by Dr. Nicholson. The workers' compensation judge (WCJ) then expressly deferred ruling on the exceptions filed by J.E. Merit and Ms. Joseph's request for attorney's fees to the trial on the merits. The trial court signed an order to this effect on April 20, 2000.
Thereafter, Ms. Joseph chose to see Dr. Stephen Flood rather than Dr. Nicholson allegedly because she would have had to wait at least a month before being seen by Dr. Nicholson. Dr. Flood first examined Ms. Joseph on May 15, 2000 and as result of subjective complaints, desired to have additional diagnostic testing performed on Ms. Joseph. Dr. Flood also found Ms. Joseph to be temporarily, totally disabled, but noted that Ms. Joseph could perform light-duty, sedentary work if she so desired.
Authorization for the additional diagnostic testing was denied and on June 26, 2000, Ms. Joseph amended and supplemented her original disputed claim for compensation to seek penalties and attorney's fees for the failure to authorize the additional diagnostic testing and for failure to pay her indemnity benefits based on Dr. Flood's finding that she was temporarily, totally disabled. J.E. Merit filed an answer to Ms. Joseph's amended and supplemented petition on July 11, 2000, wherein it denied liability to Ms. Joseph for any additional workers' compensation benefits.
Shortly after commencing treatment of Ms. Joseph, Dr. Flood moved his practice to Lake Charles and referred Ms. Joseph to Dr. Joseph Rauchwerk for continued treatment. Dr. Rauchwerk's records of his initial treatment of Ms. Joseph do not indicate any complaints of neck or shoulder pain; however, during the course of his treatment, Ms. Joseph did express such complaints and he therefore requested the following additional diagnostic studies: an EMG of the lumbar and cervical spines, a cervical MRI and a lumbar discogram.
Although the record contains two motions for partial summary judgment filed by Ms. Joseph, a resolution of these motions does not appear in the record. Nevertheless, a trial on the merits in this matter was held on March 19, 2001, at which time the WCJ determined that Ms. Joseph was entitled to an EMG of her lumbar spine. The WCJ, however, determined that Ms. Joseph's cervical and shoulder complaints were not work-related, and therefore denied the requested treatment for these complaints. The WCJ further denied Ms. Joseph's request for penalties and attorney's fees. This appeal followed.

ASSIGNMENTS OF ERROR
In this appeal, Ms. Joseph disputes the judgment of the WCJ in the following respects:
1) In finding appellant did not sustain a cervical injury.
2) In failing to find the lumbar discogram and other treatment ordered by Dr. Joseph Rauchwerk were medically necessary.
3) In failing to find appellant was temporarily totally disabled and entitled to weekly compensation benefits.
4) In applying the arbitrary and capricious standard to determine whether the defendant's conduct warranted imposition of penalties for failing to authorize medical treatment.

*76 DISCUSSION
In her first assignment of error, Ms. Joseph contests the WCJ's failure to find that her complaints of shoulder and neck pain were not work-related.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Marsh Buggies, Inc. v. Ledet, 00-1911, p. 3 (La.App. 1st Cir.12/28/01), 804 So.2d 908, 910. A worker in a compensation action must establish "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031(A). A worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Kortz v. Colt Energy Services, Inc., 97-159, p. 7 (La. App. 5th Cir.7/29/97), 698 So.2d 460, 465.
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged accident. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992). Absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 5 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 17.
The fact that an employee does not notify his employer immediately or for several days thereafter that he suffered an accident does not preclude a finding that the employee sustained an accident. Moreover, an employee should not be barred from recovery because he did not realize or diagnose the full extent of his injury immediately after it happened. Parfait, 97-2104 at 5, 733 So.2d at 17.
In denying Ms. Joseph's request for additional medical treatment and indemnity benefits, specifically as related to her shoulder and cervical complaints, J.E. Merit relied on the medical report of Dr. Kilroy and the fact that Ms. Joseph failed to disclose any injury to her shoulder or neck, when recounting her physical complaints, to emergency room physicians at OLOL, Dr. Kilroy or Dr. Rauchwerk, during her initial visits with him. The WCJ found that because Ms. Joseph's initial medical records failed to disclose any complaints of cervical pain, the alleged shoulder and cervical injuries were not compensable. The WCJ also found that "there is no evidence in the records of Dr. Stan Mays or Dr. Flood that these cervical complaints were made."
The record does not support this finding by the WCJ. Specifically, the record reveals that at her initial visit with Dr. Mays on January 26, 2000, Ms. Joseph complained of stiffness in her shoulder and neck. Ms. Joseph also continued to complain of such pain during her second visit, at which time Dr. Mays referred Ms. Joseph to Dr. Nicholson for an orthopedic consultation.
As stated earlier, instead of seeing Dr. Nicholson, Ms. Joseph saw another orthopedist, Dr. Flood, on May 15, 2000. Dr. Flood's medical records also reveal that Ms. Joseph complained of stiffness in her shoulder and neck following the initial work-related incident on January 13, 2000, which progressed to pain following another alleged workplace accident occurring a few days later.
The fact that Ms. Joseph's medical records from the various healthcare providers do not show that any objective signs of injury is insufficient to defeat a finding that Ms. Joseph's alleged shoulder and cervical injuries were not work-related. *77 This is especially true in light of the medical records and deposition testimonies of Drs. Flood, Rauchwerk and Kilroy that further medical treatment, in the form of various requested diagnostic tests, is needed to conclusively discount complaints based on a lack of objective evidence of injury.
Further, considering the legal precept that a worker's testimony alone is sufficient to establish a work-related accident, Ms. Joseph's consistent statement of how the stiffness in her neck and shoulder were exacerbated by the second accident, and the corroboration of this testimony by the medical records of Drs. Mays and Flood, we conclude that Ms. Joseph met her burden of proving that the complained of injuries to her shoulder and neck are work-related.
Accordingly, we hold that the WCJ was clearly wrong in finding that Ms. Joseph failed to prove her alleged shoulder and neck injuries were work-related by a preponderance of the evidence. Our review of the remaining issues in this appeal will be de novo.
Implicit in our finding that Ms. Joseph proved by a preponderance of the evidence that her shoulder and neck complaints were work related, and additionally based on the deposition testimony of Drs. Rauchwerk and Kilroy, we further find the additional diagnostic testing requested by Dr. Rauchwerk to be medically necessary. See La. R.S. 23:1203; Fenyes v. Highland Park Medical Center, 97-0120, p. 5 (La. App. 1st Cir.2/20/98), 708 So.2d 493, 496.
The evidence in the record does not support a finding that Ms. Joseph is temporarily, totally disabled. Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not the same or one similar to that in which the employee was customarily engaged when injured. La. R.S. 23:1221(1)(c); Johnson v. Aetna Casualty & Surety Co., 422 So.2d 1187, 1189 (La.App. 1st Cir.1982), writ denied, 429 So.2d 127 (La.1983). Both Drs. Flood and Rauchwerk, who were the only doctors to issue a finding that Ms. Joseph was temporarily, totally disabled, also conversely found that the claimant could perform sedentary to light-duty work.
Further, we find that Ms. Joseph failed to prove her entitlement to supplemental earnings benefits pursuant to La. R.S. 23:1221(3). In order to recover supplemental earnings benefits, claimant must first prove by a preponderance of the evidence an inability to earn wages equal to 90 percent or more of the wages he earned before the accident. Gilley v. Parkview Baptist School, 00-1937, p. 4 (La.App. 1st Cir.11/9/01), 804 So.2d 103, 105. At trial, Ms. Joseph testified that she did not remember if she had applied for work anywhere since her last day of work for J.E. Merit and stated that she has not been back to work for J.E. Merit.
Finally, in regard to Ms. Joseph's demands for penalties and attorney's fees, we find that she is not entitled to recover such damages under La. R.S. 23:1201 for J.E. Merit's alleged failure to timely pay benefits because J.E. Merit reasonably controverted her claims. In Brown v. Texas-La Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890, the Louisiana Supreme Court defined "reasonably controverted" as follows:
The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. *78 Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Medical evidence, in the form of Dr. Kilroy's medical reports and deposition testimony, in addition to Ms. Joseph's failure to disclose the alleged injuries to her shoulder and neck to the doctors at OLOL, Dr. Kilroy or initially to Dr. Rauchwerk, constitutes factual and medical information that reasonably counters that presented by Ms. Joseph. Further, Ms. Joseph failed to prove that J.E. Merit was arbitrary and capricious in failing to pay certain medical expenses incurred by her, since by her own testimony she admitted that she had never presented the documentation for these expenses to J.E. Merit. Accordingly, we reject Ms. Joseph's claims to penalties and attorney's fees pursuant to La. R.S. 23:1201.
However, in regard to Ms. Joseph's request for reasonable attorney's fees pursuant to La. R.S. 23:1121(C), we find that an award is proper. We note that in her original petition, she requested both an expedited hearing and reasonable attorney's fees pursuant to La. R.S. 23:1121. At the expedited hearing, however, J.E. Merit agreed to authorize Ms. Joseph's treatment by a physician of her choice and thereafter the hearing was summarily concluded by the WCJ who deferred ruling on Ms. Joseph's request for attorney's fees to the trial on the merits.
J.E. Merit contends that it is not liable for failing to consent to Ms. Joseph's choice of treating physician, because of its belief that Dr. Kilroy was Ms. Joseph's choice of physician. There is no dispute that the initial selection of Dr. Kilroy to treat Ms. Joseph was made by J.E. Merit, which not only scheduled her appointment, but also transported her to the initial appointment. Thereafter, Ms. Joseph was seen on three additional occasions by Dr. Kilroy, who took x-rays and performed other diagnostic tests on her lower back. On failing to find any objective signs to substantiate Ms. Joseph's subjective complaints of pain, Dr. Kilroy released her to return to work at light-duty for two weeks, and resume her full duties thereafter. However, prior to his discharge, Ms. Joseph expressed dissatisfaction with Dr. Kilroy's treatment and sought a second opinion from her family physician, Dr. Mays. Dr. Mays, in turn, referred Ms. Joseph to another orthopedic specialist.
Under these facts, we do not find that J.E. Merit proved that Dr. Kilroy was Ms. Joseph's de facto choice of physician. J.E. Merit selected Dr. Kilroy and he only saw Ms. Joseph four times, the first of which was with a representative of J.E. Merit in attendance. Further, Ms. Joseph sought consultation from her family physician, Dr. Mays, on January 26, 2000, prior to her discharge by Dr. Kilroy. Dr. Kilroy discharged Ms. Joseph on January 27, 2000. Based on these facts, we are not persuaded that Dr. Kilroy was Ms. Joseph's de facto choice of physician. See Comeaux v. Sam Broussard Trucking, 94-1631, pp. 3-4 (La.App. 3rd Cir.5/31/95), 657 So.2d 449, 452; Guillotte v. Dynamic Offshore Contractors, 628 So.2d 234, 236 (La.App. 3rd Cir.1993). We, therefore, conclude that Ms. Joseph is entitled to an award of reasonable attorney's fees based on J.E. Merit's violation of La. R.S. 23:1121(C).

*79 CONCLUSION
Based on the foregoing discussion, we hold that the WCJ manifestly erred in failing to find that Ms. Joseph's shoulder and neck complaints were work-related. We, accordingly, reverse the judgment of the WCJ denying Ms. Joseph medically-necessary treatment and order that J.E. Merit authorize the diagnostic testing requested by Dr. Rauchwerk. We further remand this matter to the WCJ for a determination of an amount of reasonable attorney's fees to which Ms. Joseph is entitled based on J.E. Merit's violation of La. R.S. 23:1121(C). All costs of these proceedings are assessed to J.E. Merit Constructors, Inc.
REVERSED IN PART, REMANDED IN PART AND RENDERED.
WHIPPLE, J., concurs in the result.