GUIDRY, J.
| aIn this workers’ compensation proceeding, an employer and its insurer appeal a judgment of the Office of Workers’ Compensation wherein the workers’ compensation judge (WCJ) found that the claimant did not violate La. R.S. 23:1208, and therefore found the employer liable for continuing benefits plus penalties and attorney fees for discontinuing the payment of workers’ compensation benefits based on the alleged violation.
FACTS AND PROCEDURAL HISTORY
The claimant, Melvin Quave, was formerly employed as a pipefitter with Air-trol, Inc. On September 10, 2002, the claimant injured his back and neck when a large pipe he was working on came loose. Immediately following the accident, the claimant continued working for Airtrol, Inc. performing his regular duties, but he was eventually assigned to light-duty tasks once it was determined by his medical providers that the pipefitter duties were aggravating his injury. In June 2003, Air-trol, Inc. terminated the claimant’s employment, and he began to receive workers’ compensation indemnity benefits in addition to medical benefits until October 10, 2006, when all benefits were terminated.
On July 13, 2007, the claimant filed a form 1008 “Disputed Claim for Compensation,” seeking reinstatement of all workers’ compensation benefits, plus penalties and attorney fees for the reduction and eventual termination of the workers’ compensation benefits provided to him. Airtrol, Inc. and Transportation Insurance Company, as Airtrol, Inc.’s workers’ compensation insurer, were named as defendants in the claim. Thé defendants opposed the claimant’s claim, asserting that the benefits provided were properly terminated due to the claimant’s violation of La. R.S. 23:1208. Following a hearing, the WCJ found that the claimant had not violated Section 1208, and consequently, she ordered the reinstatement of the claimant’s workers’ compensation benefits. The WCJ further awarded the claimant |s$2,000.00 as a penalty for the defendants’ termination of medical benefits, $2,000.00 as a penalty for the defendants’ termination of indemnity benefits, and $10,000.00 in attorney fees. It is from this judgment that the defendants now appeal. Claimant has answered the appeal seeking additional attorney fees for work performed in responding to the appeal.
ASSIGNMENTS OF ERROR
1. The [WCJ] committed legal error by awarding temporary total disability benefits.
2. The [WCJ] committed legal error by awarding any workers, compensa *736 tion benefits to Claimant when he failed to meet his burden of proof.
3. The [WCJ] committed manifest error by denying the defendants’ § 1208 defense.
4. The [WCJ] committed legal error by awarding penalties and attorneys fees.
DISCUSSION
Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not it is the same or one similar to that in which the employee was customarily engaged when injured. La. R.S. 23:1221(l)(a) and (2)(a); Joseph v. J.E. Merit Constructorsk, Inc., 01-1666, p. 8 (La.App. 1st Cir.6/21/02), 822 So.2d 72, 77, writ denied, 02-2295 (La.4/4/03), 840 So.2d 1201. When the employee is not engaged in any employment or self-employment, in order to be entitled to temporary, total disability benefits, the employee must prove by dear and convincing evidence that he is physically unable to engage in any employment or self-employment, including employment while working in any pain. La. R.S. 23:1221(l)(c). The finding of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed |4in the absence of manifest error. Rilcer v. Popeye’s Fried Chicken, 09-0527, p. 6 (La.App. 1st Cir.10/23/09), 29 So.3d 516, 521, writ denied, 09-2776 (La.2/26/10), 28 So.3d 279.
Based on the claimant’s own testimony, it is evident that the WCJ erred in awarding the claimant temporary, total disability benefits. At trial, the claimant not only admitted that he can work, but disclosed that since the termination of his workers’ compensation indemnity benefits, he has engaged in various part-time and temporary employments to help make ends meet. Thus, as the claimant testified that he was engaged in some “employment or self-employment,” he was clearly not entitled to the temporary, total disability benefits, and the WCJ clearly erred in granting the claimant an award of such benefits. See Polkey v. handworks, Inc., 10-0718, p. 9 (La.App. 1st Cir.10/29/10), 68 So.3d 540, 549.
Nevertheless, we reject the defendants’ contention that the claimant has not proven his entitlement to supplemental earnings benefits, pursuant to La. R.S. 23:1221(3). The purpose of supplemental earnings benefits is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Poissenot v. St. Bernard Parish Sheriffs Office, 09-2793, p. 4 (La.1/9/11), 56 So.3d 170, 174. An employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. Hayes v. Louisiana State Penitentiary, 06-0553, p. 12 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 558, writ denied, 07-2258 (La.1/25/08), 973 So.2d 758. In order to recover supplemental earnings benefits, the claimant must first prove by a preponderance of the evidence an inability to earn wages equal to ninety percent or more of the wages he earned before the accident. Joseph, 01-1666 at p. 8, 822 So.2d at 77.
In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the WCJ may and should take into | .^account all those factors which might bear on an employee’s ability to earn a wage. Poissenot, 09-2793 at p. 6, 56 So.3d *737 at 174. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. Polkey, 10-0718 at p. 10, 68 So.3d at 549. In determining whether an employee has met his initial burden of proving entitlement to supplemental earnings benefits, a reviewing court must examine all evidence that bears upon the employee’s inability to earn ninety percent or more of his pre-injury wages. See Poissenot, 09-2793 at p. 6, 56 So.3d at 174.
It is undisputed that the claimant cannot return to his pre-injury employment as a pipefitter. One of the claimant’s treating physicians, Dr. Thad S. Broussard, determined that the claimant could no longer perform pipefitting duties because the work aggravated his injury. As a result, Dr. Broussard requested that a functional capacity exam be performed on the claimant to determine if he needed to be retrained to perform some other job within the confines of the limitations revealed by the functional capacity exam. Following the functional capacity exam, Dr. Brous-sard found the following:
[Claimant] gave a very reliable effort but ... he has significant restrictions, which I think most likely would preclude him from continuing to work at his current job. He would have to have considerable restrictions and have considerable aid if he is to try to continue to work as a [pipefitter] and certainly should not be lifting over 50 lbs. I think, at this point, it is reasonable for a vocational rehabilitation [counselor] to meet with [claimant] and see if there is any way that he could be placed into some other position or trained for some other position or some modifications made at his current job, which I am not sure if that is possible or not.
As a result of the functional capacity exam, a vocational rehabilitation counselor was assigned to work with the claimant from June to October 2004. The counselor met with the claimant once to gather information regarding his educational, vocational, and medical backgrounds. Thereafter, the vocational | ^rehabilitation counselor sent letters to the claimant identifying potential job opportunities and advising the claimant to register with “Job Service” to research job opening within his geographical area, to take free computer training at the Christa McAuliffe School in Baton Rouge for assistance in learning the keyboard and to build typing speed, and to visit his local library to further research additional job leads.
At trial, the claimant stated that he contacted the employers for the jobs identified by the vocational rehabilitation counselor and learned that most would not hire him because he would be unable to pass the drug test required for the jobs due to the prescription medications that he took. Claimant also testified that while he could turn on a computer and go to websites such as Yahoo, Google and Craigslist to find things, he said he does not have any significant computer skills. He testified that he does not have an email address, does not know how to use word or data processing programs, and has limited typing skills. Thus, the claimant testified that after contacting the employers, it was revealed that he did not qualify for the jobs due to his use of prescription medications or because he lacked necessary skills, certifications, or work experience.[1]
*738 Based on our review of the evidence in the record before us, including the claimant’s testimony at trial, his medical records and the vocational rehabilitation records introduced by the defendants, we find that the claimant met his burden of showing by a preponderance of the evidence that he is unable to earn ninety percent of his pre-injury wages. Notably, it was stipulated at trial that the ^claimant’s pre-injury wages were $802.80 a week, which in her report, the vocational rehabilitation counselor found to be a wage of $30.00 per hour. Yet, all of the jobs identified by the vocational rehabilitation counselor ranged from $5.50 to $9.00 an hour, which amount is far less than ninety percent of the claimant’s pre-injury wages.
The claimant also testified regarding employment he had engaged in after the termination of his workers’ compensation benefits. The record is unclear as to the exact amount of income the claimant has succeeded in earning since the termination of his benefits, but we find his testimony sufficient to conclude that the claimant has not earned ninety percent or more of his pre-injury wages; thus, he is entitled to an award of supplemental earnings benefits from October 10, 2006, to the present.[2] However, because the defendants are entitled to offset the amount of supplemental earnings benefits paid to the claimant by the amount of income he earned, we will remand this matter to the Office of Workers’ Compensation to determine the amount of offset the defendants are entitled to receive due to the income earned by the claimant since the termination of his workers’ compensation benefits. See Guillory v. Allied Waste Industries, Inc., 10-159, p. 8 (La.App. Sd Cir.10/6/10), 47 So.3d 23, 29.
The defendants further assert that the evidence establishes that the claimant violated La. R.S. 23:1208 and that the WCJ erred in finding otherwise. Section 1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[[Image here]]
E. Any employee violating this Section shall, upon determination by [a] workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
The requirements for forfeiture of benefits under Section 1208 are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Jim Wal *739 ter Homes, Inc. v. Prine, 01-0116, p. 8 (La.App. 1st Cir.2/15/02), 808 So.2d 818, 824. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Newman v. Richard Price Construction, 02-0995, p. 5 (La.App. 1st Cir.8/8/03), 859 So.2d 136, 141. The issue of whether an employee forfeited workers’ compensation benefits is one of fact, which is not to be reversed on appeal, absent manifest error.[3] Angelo Iafrate Construction Co. v. Herring, 05-1461, pp. 4-5 (La.App. 1st Cir.9/1/06), 943 So.2d 487, 490, writ denied, 06-2365 (La.12/8/06), 943 So.2d 1097.
In the present case, the defendants terminated the payment of workers’ compensation benefits to the claimant based on certain responses he gave regarding his physical abilities in a statement recorded on April 29, 2004. The defendants allege the claimant’s statements were revealed to be false when compared to surveillance video of the claimant recorded a month prior to the statement. Specifically, the defendants assert that the following responses were false when compared to the surveillance video showing the claimant engaging in carpentry work and carrying items of construction material and furniture:
| fl[Insurance Agent]: So right now you’re not working at all?
[Claimant]: No_
[Insurance Agent]: Okay, you said you hadn’t looked for work after [the] lay oft?
[Claimant]: No
[Insurance Agent]: Okay, you haven’t worked since then?
[Claimant]: No other than around the yard, around the house, and they don’t pay.
[[Image here]]
[Insurance Agent]: What other, what other things we haven’t covered, that you were able to do before you got hurt that you don’t do now.
[Claimant]: Well, I did play basketball with the kids, I could play football with them, baseball, have a normal sex life, let me see, I used to do a lot of side line work, like doing carpenter work, building stuff, you know, making extra money on the side doing carpenter work, and all, I can’t do none of that no more. I used to cut my yard, my mother-in-law’s yard, and my momma’s yard all the time, and they both had to hire people to come cut their yards for them now. Cause I can’t do it.
[Insurance Agent]: You haven’t been able to do any of this, sports ...
[Claimant]: No.
[Insurance Agent]: No other carpentry work ...
[Claimant]: I could move the world if you found a place to hook it up for me, but now I can’t do nothing. There wasn’t nothing I would back down from....
As previously stated, the surveillance video of the claimant showed him carrying various items and performing carpentry work. When questioned at trial regarding the video and his recorded statement, the claimant gave the following explanation:
*740 lin[W]hen I say carpentry work, you’re getting — it’s like a job you’re getting paid for. That’s what I was under the impression it was — thought I was doing it to, you know, make side money for like sideline work. But at the time, I was not doing it. That was just I went over there for 30, 45 minutes and showed a guy how to do something and then I left. I wasn’t really working. I mean, my description of work maybe— maybe I misunderstood him, what he meant. But as far as work, 1 was thinking of work I had done before, like building decks and stuff like that.
Q You acknowledged for this Court that what you were doing on that videotape was, in feet, carpentry work?
A Yes, sir. Yes, sir.
The WCJ factually determined that the claimant did not violate La. R.S. 23:1208. When read in context, the claimant’s interpretation of the insurance agent’s question as referring to his engaging in carpentry work for money is reasonable. The claimant testified at trial that he was not paid for the work he was shown performing in the surveillance video and that he was simply showing “a guy how to do something.” After considering the evidence presented, we cannot say that the WCJ manifestly erred in finding the claimant’s explanation to be credible. See Frederick v. Port Aggregates, Inc., 07-552, pp. 7-8 (La.App. 3d Cir.10/31/07), 968 So.2d 1169, 1174.
Moreover, while the claimant did testify at trial that he began performing carpentry and other work for pay after the defendants terminated payment of his workers’ compensation benefits in 2006, we still decline to find that the WCJ erred in her finding. The claimant’s statement was recorded in 2004 and a plain reading of the questions posed to the claimant for the recorded statement reveals that he was questioned specifically about his activities and abilities at the time statement was recorded. As such, we do not find his subsequent actions to be sufficient grounds for rejecting the findings of the WCJ on this issue.
However, we do find that the WCJ abused her discretion in assessing penalties and attorney fees pursuant to La. R.S. 23:1201(F) against the defendants h fin this case. Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers’ compensation benefits are penal in nature and must be strictly construed. Penalties should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant’s entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. J.E. Merit Constrictors Inc. v. Hickman, 00-0943, p. 5 (La.1/17/01), 776 So.2d 435, 438. In Brown v. Texas-LA Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890, the Louisiana Supreme Court defined “reasonably controverted” as follows:
The phrase “reasonably controverted,” on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase “reasonably controvert” that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant’s right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he re *741 fused to pay all or part of the benefits allegedly owed.
In this case, the defendants terminated payment of workers’ compensation benefits to the claimant based on what they perceived as false statements made in his recorded statement when viewed in light of surveillance video of the claimant. A viewing of the surveillance video makes some of the claimant’s responses in his recorded statement questionable; however, as previously stated, we cannot say that the WCJ committed manifest error in choosing to credit the claimant’s explanation of his comments to find that the claimant did not make a willful misrepresentation in violation of La. R.S. 23:1208. Nevertheless, the evidence clearly was sufficient to reasonably controvert the claimant’s claim to continued benefits, and as such, we find that the WCJ erred assessing the defendants with penalties and attorney fees for the termination of the claimant’s benefits.
| ^Finally, we address the answer to this appeal filed by the claimant seeking additional attorney fees for responding to this appeal. Based on our resolution of this appeal, we deny the relief requested.
CONCLUSION
Accordingly, we find that the WCJ legally erred in awarding the claimant temporary, total disability benefits and reverse that award. We find that the claimant is entitled to an award of supplemental earnings benefits and remand this matter to the Office of Workers’ Compensation to calculate the amount of supplemental earnings benefits to paid to the claimant after determining the amount of offset to be received by the defendants in paying such benefits based on income received by the claimant from self-employment since the termination of his workers’ compensation benefits. We affirm the WCJ’s finding that the claimant did not violate La. R.S. 23:1208, but as we find that the WCJ abused her discretion in failing to find the defendants reasonably controverted the claimant’s entitlement to workers’ compensation benefits, we reverse the WCJ’s award of penalties and attorney fees based on the defendants’ termination of the claimant’s workers’ compensation benefits. We also deny the relief requested by the claimant in his answer to this appeal. In all other respects, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART, AND REMANDED WITH INSTRUCTIONS; ANSWER TO APPEAL DENIED.
WHIPPLE and KUHN, JJ., concur.

. Dr. Broussard’s medical records reveal that while the claimant was still employed by Air-trol, Inc., the claimant was advised by Dr. Broussard that he could not take his medication while at work or while operating any type of equipment. Cf. Cole v. Langston Com *738 panies, Inc., 98-1202, pp. 10-12 (La.App. 3d Cir.2/3/99), 736 So.2d 896, 901-02. Also, two of the jobs identified by the vocational rehabilitation counselor were for security guard, both of which required certification from the State of Louisiana; however, review of the job descriptions placed into evidence by the defendants reveals that both jobs also stated that training would be provided to obtain the required Louisiana certification. Nevertheless, both jobs also required drug testing.

. The claimant testified that he did carpentry work for a man who owned rent houses at the rate of $15.00 per hour for four to five hours a day, three or four days a week; that he cleaned FEMA trailers at a rate of $100.00 per trailer, of which he received half of the payment or $50.00 per trailer, averaging five or six trailers a week; that he performed duct work and welding work at fast food restaurants at a rate of $25.00 per hour for six to eight hours a day, three to four days a week, with each of those jobs lasting for a period of five months or less. He also testified that at the time of trial that "I got a couple yards I keep up.... I got three little yards I do.”

. Although we find the WCJ legally erred in holding that the claimant is entitled to temporary, total disability benefits, such error did not interdict her findings regarding a violation of La. R.S. 23:1208; therefore, de novo review of this issue is not warranted. See C.R.W. v. State, Department of Social Services, 05-1044, p. 11 (La.App. 1st Cir.9/1/06), 943 So.2d 471, 482, writ denied, 06-2386 (La. 12/21/06), 944 So.2d 1289.