898 So.2d 474 (2004)
Blair J. LAFLEUR
v.
ALEC ELECTRIC.
No. 2004 CA 0003.
Court of Appeal of Louisiana, First Circuit.
December 30, 2004.
*476 Troy Allen Broussard, Lafayette, Counsel for Plaintiff/Appellee Blair J. Lafleur.
H. Douglas Hunter, Opelousas, Counsel for Defendant/Appellant Alec Electric.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
Plaintiff, Blair Lafleur, was employed as an electrician by defendant, Alec Electric, from May 31, 2000 until December 27, 2000, when he suffered a work-related injury. Lafleur received an electrical shock while standing on a ladder wiring a light fixture. Upon being shocked, Lafleur fell from the ladder, fracturing his pelvis/hip. Surgery was performed and disability benefits were paid by or on behalf of Alec Electric.
A functional capacity exam (FCE) performed on October 22, 2001 indicated that Lafleur could return to medium-level work. Lafleur's treating physician, Dr. Richard Robichaux, Jr., agreed with Lafleur's returning to medium-level work on January 29, 2002.
Lafleur was paid temporary total disability (TTD) benefits until January 31, 2002, when both the FCE and Dr. Robichaux indicated that Lafleur could return to medium-level work. At this time, Alec Electric alleges that specific jobs were being located which would meet Lafleur's medical restrictions, and Lafleur was paid supplemental earnings benefits (SEB) at the full TTD rate.[1] Lafleur received these *477 SEB through April 30, 2002, when it was indicated by Lafleur's vocational rehabilitation counselor, Buster Fontenot, that Lafleur could obtain gainful employment with specific employers. In September of 2002, Fontenot identified to Lafleur suitable positions available with specific employers.
Alec Electric refused to pay Lafleur permanent partial disability (PPD) benefits for scarring and disfigurement because it contended that the scar on Lafleur's hip was a result of the surgery and not the work-related accident and also was not readily apparent because of its location.
Lafleur filed suit against Alec Electric in the Louisiana Office of Workers' Compensation, seeking reinstatement of his discontinued benefits; penalties and attorney fees for Alec Electric's failure to pay the FCE invoice timely; penalties and attorney fees for failure to pay SEB and PPD benefits and/or scarring and disfigurement benefits timely, i.e., on a weekly basis; penalties and attorney fees for miscalculation of his average weekly wage; payment of Lafleur's health club membership; and vocational rehabilitation.
After a trial, the Workers' Compensation Judge (WCJ) found that Alec Electric miscalculated Lafleur's weekly wage, but that Lafleur was not entitled to penalties and attorney fees for this miscalculation; Alec Electric owes Lafleur a $1,300.00 penalty and $1,500.00 in attorney fees for its failure to pay the FCE invoice timely; Alec Electric owes Lafleur a $2,000.00 penalty and $1,500.00 in attorney fees for its failure to pay SEB and PPD benefits and/or scarring and disfigurement benefits timely, i.e., on a weekly basis; Alec Electric owes Lafleur $2,500.00 in attorney fees for its improper termination of Lafleur's indemnity benefits on April 30, 2002; Alec Electric owes Lafleur past SEB at the rate of $388.00 per week for forty weeks and one day, for a total of $15,575.42; Alec Electric owes past SEB at the rate of $261.35 per week for the period of February 6, 2003 through the date of judgment; and Alec Electric shall continue paying SEB to Lafleur at the rate of $261.35 per week.
Alec Electric filed this appeal, assigning the following errors:
1. The WCJ erred in finding Alec Electric improperly terminated indemnity benefits on April 30, 2002.
2. The WCJ erred in finding that Lafleur was entitled to PPD benefits for scarring and disfigurement.
3. The WCJ erred in finding that Alec Electric failed to pay SEB and PPD benefits and/or scarring and disfigurement benefits timely, i.e., on a weekly basis.
4. The WCJ erred in finding that Lafleur was entitled to penalties and attorney fees for Alec Electric's failure to timely pay the FCE invoice.
Lafleur answered the appeal and assigned the following errors:
1. The WCJ was clearly wrong in finding that The Home Depot job was suitable employment for Lafleur, given his "walking/standing" restrictions.
2. The WCJ erred in failing to order LUBA to retrain Lafleur in the field of computer-aided drafting.
3. The WCJ erred in awarding insufficient attorney fees under the circumstances.
For the following reasons, we affirm the judgment and award additional attorney fees to Lafleur for work done on this appeal.

*478 DISCUSSION
In a workers' compensation case, as in other cases, we are bound by the manifest error rule and may not set aside the trial court's findings of fact unless they are clearly wrong or manifestly erroneous. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

Alec Electric's Assignment of Error Number 1
Alec Electric claims that the WCJ erred in finding that it improperly terminated Lafleur's benefits on April 30, 2002 because it was clear as of that date that Lafleur could obtain gainful employment with specific employers.
The purpose of SEB is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. This is necessarily a factual analysis in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 8-9 (La.7/1/97), 696 So.2d 551, 556.
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEB or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i). Actual job placement is not required. Banks, 96-2840 at p. 9, 696 So.2d at 556.
An employer may discharge its burden of proving job availability by establishing the existence of a suitable job within the claimant's physical capabilities and within the claimant's or the employer's community or reasonable geographic region, the amount of wages that an employee with claimant's experience and training can be expected to earn in that job, and an actual position available for that particular job at the time that the claimant received notification of the job's existence. Banks, 96-2840 at pp. 10-11, 696 So.2d at 557.
Alec Electric does not argue that Lafleur failed to meet its burden of proving that the work-related injury resulted in his inability to earn at least ninety percent of his pre-injury wages. Rather, Alec Electric argues that once the burden shifted, the WCJ erred in finding that Alec Electric failed to produce evidence of a suitable job available to Lafleur as of April 30, 2002.
After reviewing the evidence, the WCJ found that Alec Electric's termination of Lafleur's benefits, based upon his release to medium-level work and the classification of his job of injury as medium-level, was arbitrary and capricious and without probable cause. Dr. Robichaux released Mr. Lafleur to medium-level work, but with *479 restrictions, and noted that Mr. Lafleur's restrictions would prevent him from performing certain aspects of an electrician's job. Furthermore, the WCJ found that the jobs identified by Alec Electric as available to Lafleur in September 2002 were all electrician jobs and were not suitable, as Lafleur was not fit to do all of the duties required of electrician jobs. Based upon the evidence in the record, including the records from Lafleur's treating physician, Dr. Richard Robichaux, the trial court did not err in so finding.

Alec Electric's Assignment of Error Number 2
The WCJ found that Lafleur proved his PPD claim for scarring and disfigurement. According to La. R.S. 23:1221(4)(p), where the employee is seriously and permanently disfigured, compensation not to exceed sixty-six and two-thirds percent of the wages for a period not to exceed one hundred weeks may be awarded. The WCJ awarded Lafleur sixty-five weeks of compensation for scarring and disfigurement.
It is well settled that in order to recover for scarring and disfigurement under La. R.S. 23:1221(4)(p), the injury must be materially disfiguring and permanent in nature. Templet v. Travelers Ins. Co., 278 So.2d 805, 808 (La.App. 1 Cir.1973). Although Alec Electric argued at trial that it did not owe PPD benefits for scarring and disfigurement because the scar was a result of the surgery and not the work-related injury and also because it was not readily apparent due to its location on Lafleur's hip, they raise a different argument on appeal. Alec Electric argues on appeal that because the WCJ viewed photographs of the scarring and disfigurement taken in January of 2002 and then viewed the scarring and disfigurement again at the hearing and afterwards noted that there had been some improvement, the scarring was not "permanent" as required for recovery. The fact that the scar may have improved somewhat by the time of trial does not take away from the WCJ's finding of fact that as of the date of trial, Lafleur's scar was permanent and materially disfiguring. We have reviewed the evidence contained in the record and do not find this factual determination to be manifestly erroneous.

Alec Electric's Assignment of Error Number 3
Alec Electric's third assignment of error is that the WCJ erred in finding that it was required to pay SEB and PPD benefits and/or scarring and disfigurement benefits on a weekly basis.
Louisiana Revised Statutes 23:1201(A) provides that:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
If an employer fails to make payment in accordance with this statute, subsection La. R.S. 23:1201(F) provides that the employer shall be assessed a penalty and reasonable attorney fees. However, subsection (F)(2) provides that penalties and attorney fees shall not be imposed if the claim is reasonably controverted or if such nonpayment results from conditions over *480 which the employer or insurer had no control. Alec Electric claims that the conversion of Lafleur's payments to monthly payments was necessary because it relies on monthly earnings reports provided by Lafleur at the end of the month to calculate Lafleur's SEB, and as such, this was out of Alec Electric's control.
The WCJ found that the February 1, 2002 conversion to monthly payments was a violation of 23:1201(A), since Lafleur's wages were paid on a weekly basis when he was working and there was no agreement between the parties to pay the wages at a different time, and the court did not find that the nonpayment resulted from conditions over which Alec Electric had no control. As such, the trial court did not err in awarding penalties and attorney fees to Lafleur.

Alec Electric's Assignment of Error Number 4
Alec Electric next urges that the WCJ erred in awarding penalties and attorney fees for its failure to timely pay the invoice for Lafleur's FCE. Although Alec Electric admits that the invoice was not paid timely, it alleges that penalties and attorney fees are not owed because the claim was "reasonably controverted" and out of the control of the employer under La. R.S. 23:1201(F)(2).
Medical benefits due a workers' compensation claimant must be paid within sixty days after the employer or insurer receives written notice thereof. La. R.S. 23:1201(E). Penalties and attorney fees may be awarded for failure to provide such payment timely, unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F).
According to Gary Williams, the adjuster handling the claim, the FCE invoice was received on November 6, 2001 and went through an internal utilization review, after which the review company stated that the bill should not be paid because it was not done by a licensed physical therapist. Upon receiving the recommendation of the review company on January 3, 2002 and realizing that the FCE in fact states that a licensed physical therapist was involved, Williams overrode the recommendation and the bill was paid on January 31, 2002, twenty-six days late.
An employer cannot urge in its defense its own poor clerical work or administrative lapses to escape penalties for nonpayment of workers' compensation benefits. Rollins v. Glitsch Field Services, Inc., 97-1404, p. 9 (La.App. 3 Cir. 5/13/98), 713 So.2d 674, 678, writ denied 98-1590 (La.9/18/98), 724 So.2d 763. Based upon the evidence contained in the record and the applicable law, we find no error in the WCJ's finding that the claim was not reasonably controverted and the late payment was not due to circumstances outside of Alec Electric's control.

Blair Lafleur's Assignment of Error Number 1
The WCJ found that Alec Electric met its burden of proving suitable and available employment as of February 2003 with the Home Depot job. The Home Depot position was not for typical electrician-type work; rather, Home Depot was looking for an electrician to work as a customer service representative in electronics. On August 14, 2002, Dr. Robichaux estimated that Mr. Lafleur could stand/walk frequently (34-66% of the work day) and never climb or crawl. The job information sheet prepared by Mr. Fontenot's assistants on the Home Depot job states that the job requires constant (67% or more of the work day) standing, frequent (34-66% of the work day) walking, *481 and infrequent (1-10% of the work day) climbing. The employer was not questioned about crawling. At trial, Mr. Fontenot testified that he was very familiar with the Home Depot because he works with them frequently since they hire people with disabilities to reap the tax benefits. He stated that, although the information was not contained on the form, he knew from his experience with Home Depot that the position required no crawling. He also estimated that the Home Depot job did not require constant standing as indicated on the form prepared by his assistant. Furthermore, he testified that under the Americans with Disabilities Act, employers such as the Home Depot know that they have to accommodate employees' restrictions to the best of their ability and it has been his experience that the Home Depot definitely accommodates employees' restrictions as needed.
The judge clearly found Mr. Fontenot's testimony to be credible and concluded that, based upon Mr. Fontenot's testimony regarding the Home Depot position, that job was suitable for Mr. Lafleur. Having reviewed the evidence in the record and the testimony at trial, we find no manifest error in this conclusion.

Blair Lafleur's Assignment of Error Number 2
Mr. Lafleur's next assignment of error is that the WCJ erred in failing to order LUBA to retrain Lafleur in the field of computer-aided drafting. La. R.S. 23:1226, governing rehabilitation of injured employees, provides, in part:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:
(a) Return to the same position.
(b) Return to a modified position.
(c) Return to a related occupation suited to the claimant's education and marketable skills.
(d) On-the-job training.
(e) Short-term retraining program (less than twenty-six weeks).
(f) Long-term retraining program (more than twenty-six weeks but not more than one year).
(g) Self-employment.
The WCJ found that, under the hierarchy listed in La. R.S. 23:1226(B)(1), since there was other employment that has been identified for Mr. Lafleur that is suitable and available, retraining is not available. Since we agree that jobs in a related occupation which are suitable for Mr. Lafleur have been identified, we find no error in the WCJ's ruling.

Blair Lafleur's Assignment of Error Number 3
Mr. Lafleur's final assignment of error is that the $5,500.00 in attorney fees awarded by the WCJ was insufficient under the circumstances.
When attorney fees are awarded in a workers' compensation case, they are deemed to be a penalty, and the value of the attorney fees need not be proven. A trial judge is allowed to call upon his own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case. The factors to be considered in the imposition of an award for attorney fees in workers' compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount *482 recovered, and the amount of time devoted to the case. Insurance Co. of North America v. Labit, 99-2448 (La.App. 1 Cir. 11/15/00), 772 So.2d 385, 389.
After reviewing the record and considering the degree of skill and work involved in the preparation of this case, we find the WCJ did not abuse his discretion in awarding $5,500.00 in attorney fees.
Mr. Lafleur next requests that additional attorney fees be awarded for the work performed on this appeal by Alec Electric. Additional attorney fees are usually awarded on appeal when a party appeals, obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. Loup v. Louisiana State School for the Deaf, 98-0329, p. 8 (La.App. 1 Cir. 2/19/99), 729 So.2d 689, 694; Warren v. Maddox Hauling, 02-733, p. 6 (La.App. 3 Cir. 12/4/02), 832 So.2d 1082, 1087, writ denied 03-0004 (La.4/21/03), 841 So.2d 791. Under the circumstances, we find that an award of $1,000.00 in attorney fees is appropriate for the work performed on this appeal.

DECREE
For the above reasons, the judgment of the trial court is affirmed, and we award an additional $1,000.00 in attorney fees for the work performed by Mr. Lafleur's counsel on this appeal.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs.
Although I find no error in the award of penalties and attorney fees for Alec Electric's failure to timely pay the invoice for Mr. Lafleur's functional capacity exam, I disagree with the majority's conclusion that the trial court did not err in imposing penalties and attorney fees for the failure to pay Mr. Lafleur's benefits on a weekly basis. In calculating Mr. Lafleur's supplemental earnings benefits, Alec Electric relied on monthly earnings reports not provided by Mr. Lafleur until the end of the month and could not make the necessary calculations until said information was received. Therefore, I believe Alec Electric carried its burden of showing that the late payment was due to circumstances outside of its control. However, because penalties and attorney fees were correctly assessed with regard to the failure to timely pay for the functional capacity exam, I will concur in the result reached by the majority.
NOTES
[1] Alec Electric paid Lafleur's SEB on a monthly basis, although Lafleur was paid on a weekly basis before his accident. Alec Electric claimed that this was done because Lafleur's benefits were based on his current earnings, which were not submitted to Alec Electric until the end of the month.