HUGHES, J.
1 ?This appeal challenges a ruling that a workers’ compensation claimant failed to sustain his burden of proving entitlement to indemnity benefits and to continued medical benefits. We affirm.
BACKGROUND
On March 15, 2001 while in the course and scope of his employment with Petrin Corporation, appellant Eric Lolis tripped and fell over a pipe rack at the work site and landed on his back. He did not return to work for Petrin following the incident, but made a claim for workers’ compensation benefits, claiming that he had injured his back in the fall. Petrin refused to pay Lolis medical or indemnity benefits, disputing the fact of an accident and any resulting disability.
On May 24, 2001 Lolis filed this disputed claim for compensation with the Office of Workers’ Compensation (OWC), seeking to recover medical expenses, temporary total disability benefits, supplemental earnings benefits, attorney’s fees, and penalties. The parties stipulated that Lolis was employed by Petrin at the time of the alleged work injury, that Lolis’s average weekly wage was $388.00, and that the Louisiana Workers’ Compensation Corporation (LWCC) provided workers’ compensation coverage to Petrin for the incident at issue.
At trial, Lolis testified that prior to being employed by Petrin, he had worked for a number of mortgage companies doing loan origination work and had worked for approximately 15 companies at temporary job assignments at construction sites. Personnel records introduced into evidence jointly by the parties show that from December 10, 1999 through February 2, 2001, Lolis worked intermittently for a temporary employment |sagency, Labor Ready. These records reveal that for the year 2000, Lolis worked one day in March, six days in April, twenty-two days in May, six days in June, and for the year 2001, he worked nine days in January and two days in February.
In March of 2001, Petrin hired Lolis as a “fire watcher” on one of its welding crews. Lolis’s job was to stand watch where the welders were working to make sure no sparks or flames from the welding work caused a fire. On March 15, 2001, less than two weeks after he was hired by Petrin, Lolis arrived at the work site for the evening shift. He testified that he had been working about two hours when he left his post to go to the restroom. Lolis attested that as he was walking toward his work unit, he encountered a pipe rack, his leg became entangled in it, and while he was trying to free himself, he lost his balance and fell to the ground on his back. Petrin employees Eddie Nagin and Carol Lyons did not witness the fall, but saw Lolis on the ground as he was trying to *126 get up. Lolis stated that after his supervisor was informed of the accident, the supervisor told him he could leave for that evening. The Petrin employees testified, however, that a very angry Lolis told them he was quitting his job and to get him out of the plant.
The next morning, Lolis went to the Baton Rouge General Hospital’s emergency room complaining of back pain as a result of his fall at work. The x-rays taken of Lolis’s shoulder and cervical spine revealed no fractures or dislocations. Lol-is was diagnosed with musculoskeletal pain, and no restrictions were placed on his activities at that time. He returned to the hospital’s emergency room on April 6, 2001 with complaints of back pain. Again, he was diagnosed with musculoskeletal pain, and ibuprofen and flexeril were prescribed. Lolis’s discharge instructions did not restrict him |4from returning to work, but did contain a work/activity restriction of lifting no more than fifteen pounds until April 10, 2001.
Lolis testified that he called Petrin’s Human Resources Department to report the work accident a few days after it happened, making a claim at that time for compensation payments and medical benefits, which was denied. In support of his disability claim, Lolis introduced the deposition of Dr. James E. Hines III, a family practitioner who first treated Lolis on June 27, 2001 for back pain associated with the work injury. Dr. Hines could not locate records of Lolis’s initial visits, although he did recall treating Lolis on four occasions through December of 2001 for back pain. Dr. Hines diagnosed Lolis as having sustained a back strain with no signs of any disc injury or radiculopathy. In December of 2001, Dr. Hines opined that Lolis’s back condition was chronic because Lolis was still complaining of back pain nearly eleven months after the work accident, while low back strain injuries typically improve within six to eight weeks.
Dr. Hines testified that he filled out a disability form on January 16, 2002, attesting that Lolis was disabled from June 27, 2001 to an unknown time because of his back problem. He acknowledged that at the time he filled out the form, Lolis had not yet been seen by an orthopedic specialist. He further acknowledged that he was unaware that Lolis had in fact returned to work, and that this would change his opinion as to whether Lolis should work. He testified that in light of the length of time that had passed since the work incident, he believed that Lolis probably could work as of the date he filled out the disability form because Lolis’s condition had not progressed, but he still felt Lolis’s return to work was “foggy and ill advised.” Dr. Hines stated that he continued to treat Lolis until September 23, 2003 for back pain and other conditions, including diabetes. He opined that Lolis had reached |fihis maximum medical improvement as of October 21, 2003, and that he would be reluctant to release Lolis to return to work without a consult from an orthopedic specialist.
The remaining medical evidence showed that an MRI scan was taken of Lolis’s lumbar spine on March 20, 2002, which was normal. Lolis underwent physical therapy for lower back pain on four occasions in June of 2002. Thereafter, Lolis saw Dr. Theodore Knatt, an orthopedist, in August of 2002 complaining of back pain. Although Dr. Knatt recommended physical therapy, there is no indication of a disability finding by the doctor in the medical records produced at trial.
In March of 2003, a Functional Capacity Evaluation was performed on Lolis. The FCE report indicated that Lolis was capable of working a full-time job in the mid-medium physical demand level. The report set forth restrictions regarding sit *127 ting, squatting, stooping, and reaching. On November 3, 2003, Dr. William Hagem-ann of the Bone and Joint Clinic of Baton Rouge performed a physical examination of Lolis at the request of the LWCC. According to Dr. Hagemann’s report, the results of that examination were normal. Dr. Hagemann attested that Lolis appeared to have reached his maximum medical recovery and he could find no physical reasons to impose any restrictions on Lol-is’s employment activities.
Regarding Lolis’s work history, Lolis testified that he did not work for two to three months following the March 15, 2001 work accident, and returned to work only because he needed to support himself. He stated that his first employer following the work injury was Savard Staffing Services, where he worked on a garbage truck emptying trash, followed by a series of temporary jobs with Labor Finders, Labor Ready, and Lofton Staffing | ^Services. He testified that his back problem prevented him from working a normal 40-hour work week.
However, documentary evidence in the record includes a 2001 W-2 Wage and Tax Statement from Savard Staffing Services, Inc., listing Lolis’s 2001 wages as $1,958.65, and a job application Lolis filled out with Labor Finders, wherein he wrote that he had worked for two financial companies in April of 2001. According to Lol-is’s testimony, the job at Savard would have preceded the work at the two financial companies in April, and therefore must have occurred in March or April, 2001. Also, in the job application dated April 30, 2001, Lolis responded affirmatively to questions regarding his ability to walk up and down stairs with loads of 25 pounds.
Employment records demonstrate that Lolis returned to work with Labor Ready on August 24, 2001 and worked on jobs through that agency on a consistent basis through November 17, 2003. Lolis admitted at trial that he had worked with Labor Ready consistently since August of 2001. He also worked intermittently as a general laborer for Lofton Staffing Services and for Savard Staffing in 2003. These jobs, he attested, primarily involved construction type work.
Following the presentation of the evidence, the Workers’ Compensation Judge (WCJ) found that Lolis had sustained his burden of proving that an accident occurred during the course of his employment with Petrin on March 15, 2001. He also ruled that Lolis proved he suffered from a lumbar strain as a result of the accident, and awarded medical expenses related to the lumbar strain through November 3, 2003. However, the WCJ denied the claim for indemnity benefits, finding that Lolis failed to demonstrate that he was unable to work or was making less money than he had been, due to a disability from the work accident. In so doing, the WCJ ^observed that the evidence showed Lolis returned to work shortly after the injury to jobs requiring a similar or an even greater level of exertion than the fire-watching position he had with Petrin. Lastly, the WCJ awarded Lolis $2,500.00 in attorney’s fees and a $2,000.00 penalty for defendants’ failure to prove they reasonably controverted Lolis’s entitlement to medical benefits.
This appeal, taken by Lolis, followed.
DISCUSSION
In this appeal, Lolis essentially challenges the WCJ’s finding that he failed to prove entitlement to indemnity benefits, as well as the WCJ’s refusal to extend medical benefits beyond November 3, 2003. As in other cases, in reviewing the WCJ’s factual determinations, including whether the employee has discharged his burden of proof, this court is bound by the *128 manifest error standard of , review. Lafleur v. Alec Electric, 2004-0003, p. 4 (La.App. 1st Cir.12/30/04), 898 So.2d 474, 478, writs denied, 2005-0276, 2005-0277 (La.4/8/05), 898 So.2d 1287, 1288; Moran v. G & G Construction, 2003-2447, p. 4 (La.App. 1st Cir.10/29/04), 897 So.2d 75, 79, writ denied, 2004-2901 (La.2/25/05), 894 So.2d 1148. Under that standard of review, this court may only reverse a WCJ’s factual determinations if we find from the record that a reasonable factual basis for the finding does not exist, or that examination of the entire record reveals that the finding is clearly erroneous, Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on preview where conflict exists in the testimony. Lafleur v. Alec Electric, 2004-0003 at p. 4, 898 So.2d at 478.
An employee has the burden of establishing the occurrence of an accident, and the causal relationship between the accident and the resulting disability, by a preponderance of the evidence. Moran v. G & G Construction, 2003-2447 at p. 4, 897 So.2d at 79. An employee seeking to recover indemnity benefits for a temporary total disability must prove by clear and convincing evidence that he is unable to engage in any gainful occupation, whether or not the same type of work he was engaged in at the time of the injury. La. R.S. 23:1221(l)(c). Here, Lolis failed to establish that he was unable to return to any type of occupation following his back strain. The only restriction placed on Lolis’s activities after the work accident was that he not lift over fifteen pounds until April 10, 2001. It is undisputed that at the time of the injury, Lolis was a fire watcher whose duties required him to stand in place holding a hose. Additionally, the testimony of Dr. Hines fell short of establishing that Lolis could not engage in any type of work because of his back strain. Dr. Hines acknowledged he was unaware of Lolis’s return to work at the time he filled out a disability form for Lolis in January of 2002, and he would have changed his opinion regarding Lolis’s ability to work had he known of that fact. Further, the WCJ was confronted with conflicting evidence regarding when Lolis returned to work following the March 15, 2001 work accident, and reasonably inferred from the evidence that Lolis returned to work shortly after the work accident to jobs requiring the same or a greater level of exertion than the job he had at Petrin. Based on the record, we are unable to say the WCJ committed manifest error , in finding that Lolis failed to sustain his burden of proving, by clear and convincing evidence, that he was unable 19to engage in any type of work after his fall on March 15, 2001, and we decline to disturb the WCJ’s denial of temporary total disability benefits.
Further, we find insufficient evidence in the record to support Lolis’s claim for supplemental earnings benefits. An employee is only entitled to receive such benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). The employee bears the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. La-Fleur v. Alec Electric, 2004-0003 at p. 5, 898 So.2d at 478. The documentary evidence - concerning Lolis’s work history showed that before the injury, Lolis *129 worked primarily for temporary agencies on an intermittent basis at jobs paying wages ranging from $5.15 to $7.00 per hour. After the injury, Lolis was employed at jobs for temporary agencies paying $5.15 to $8.00 per hour, on a far more regular basis. Based on this evidence, we find no error in the WCJ’s conclusion that Lolis failed to prove he was unable to earn ninety percent of his pre-injury wage.
Lastly, we find no merit to Lolis’s claim that the WCJ erred in failing to extend his medical benefits beyond November 3, 2003. The evidence clearly showed that Lolis had reached his maximum medical recovery by this date, and there was no evidence suggesting Lolis was in need of any further medical treatment because of his work accident. Accordingly, we do not disturb the WCJ’s ruling.
CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Eric Lolis.
AFFIRMED.