HUGHES, J.
 

 | ¡¡.This is an appeal from a judgment of the Office of Workers’ Compensation (“OWC”), awarding temporary total dis
 
 *544
 
 ability benefits. For the reasons that follow, we amend, and affirm as amended.
 

 FACTS AND PROCEDURAL , HISTORY
 

 On January 20, 2009 Joe Polkey, while in the course and scope of his work as an employee of Landworks, Inc. (“Land-works”) in Franklinton, Louisiana, allegedly sustained injury to his left knee when a stack of tires fell, knocking him to the ground. Landworks refused to pay workers’ compensation benefits. Thereafter, on March 17, 2009 Mr. Polkey filed a “Disputed Claim for Compensation” with the OWC, seeking to collect workers’ compensation benefits, penalties, and attorney fees from his employer, Landworks, and his employer’s insurer, LUBA Casualty Insurance Company (“LUBA”).
 
 [1]
 

 Following a hearing before the OWC, the defendants were ordered to provide follow-up medical treatment to Mr. Polkey, and he was further awarded: temporary total disability benefits from the date of his injury through August 7, 2009 (the date he became employed elsewhere), amounting to $6,083.04; a $2,000.00 penalty for the defendants’ failure to pay medical benefits; a $2,000.00 penalty for the defendants’ failure to pay indemnity benefits; attorney fees in the amount of $10,700.00; employee’s costs in the amount of $445.00; and judicial interest from the date of demand. Defendants have appealed this judgment and make the following assignments of error:
 

 |sl. The Workers’ Compensation Judge committed manifest error in concluding that [Mr.] Polkey sustained his burden of proving an accident arising out of and in the course of his employment with Landworks, Inc. on January 20, 2009.
 

 2. The Workers[’] Compensation Judge abused her discretion in not allowing proffered, relevant evidence, or in not granting a continuance to secure the testimony of a witness who was under subpoena, but did not appear at trial.
 

 3. The Workers[’] Compensation Judge abused her discretion in not strictly construing the penalty provisions of the Louisiana Workers!’] Compensation Act and imposing penalties and attorney’s fees.
 

 LAW AND ANALYSIS
 

 OWC Finding of Compensable Injury
 

 The Workers’ Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his employment.
 
 See
 
 LSA-R.S. 23:1031(A). An employee must prove the chain of causation required by the workers’ compensation statutory scheme as adopted by the legislature, and must establish that the accident was employment-related, the accident caused the injury, and that the injury caused the disability.
 
 Clausen v. D.A.G.G. Construction,
 
 2001-0077, p. 2 (La.App. 1 Cir. 2/15/02), 807 So.2d 1199, 1201,
 
 writ denied,
 
 2002-0824 (La.5/24/02), 816 So.2d 851.
 

 As in other cases, in reviewing the OWC judge’s factual determinations, including whether the employee has discharged his burden of proof, this court is bound by the manifest error standard of review.
 
 Lafleur v. Alec Electric,
 
 2004-0003, p. 4 (La.App. 1 Cir. 12/30/04), 898 So.2d 474, 478,
 
 writs denied,
 
 2005-0276, 2005-0277 (La.4/8/05), 898 So.2d 1287, 1288;
 
 Moran v. G & G Construction,
 
 2003-2447, p. 4 (La.App. 1 Cir. 10/29/04),
 
 *545
 
 897 So.2d 75, 79,
 
 writ denied,
 
 2004-2901 (La.2/25/05), 894 So.2d 1148. Under that standard of review, an appellate court may only 14reverse an OWC judge’s factual determinations if it finds from the record that a reasonable factual basis for the finding does not exist, or that examination of the entire record reveals that the finding is clearly erroneous.
 
 Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Id.,
 
 617 So.2d at 883. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfin-der, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony.
 
 Lafleur v. Alec Electric,
 
 2004-0003 at p. 4, 898 So.2d at 478.
 

 In this case, the defendants/appellants contend that the alleged accident was uncorroborated and that evidence presented before the OWC discredited Mr. Polkey and cast doubt on his claim.
 
 [2]
 
 Defendants/appellants further assert that the alleged accident was contrived by the claimant because he was angry about being accused of theft in the workplace.
 

 Following the conclusion of the trial in this matter, the OWC judge gave oral reasons for ruling in favor of Mr. Polkey, stating in pertinent part:
 

 I’ve had the opportunity to listen to all the witnesses, both Mr. Polkey and the witnesses for Landworks. Right off the bat[,] I just want to say Mr. Polkey came across to me as a very credible witness. I didn’t see any real glaring inconsistencies with the description of the accident with the way it happened and the way the witnesses corroborated the incident on January 20th of 2009.
 

 | ¿The first thing I wanted to start off with is I think there was a lot put on the fact that Mr. Polkey allegedly gave notice of some sort that he had quit or that he was going to give his two-week notice. He’s testified that he gave his two-week notice and he was intending to continue working for the rest of those two weeks.
 

 Miss Emma, who testified today, actually corroborated that. She said that he had given his two-week notice that morning. And the more interesting thing was she testified about the phone call Mr. Polkey allegedly got from Detective Stubbs, and Miss Emma’s testimony was she said that Mr. Polkey said he had to take tomorrow evening off to meet with the sheriff.
 

 So, in other words, that to me corroborates the fact that whether or not he told somebody, I quit, it’s more probable to me that he did tell Miss Emma, I’m giving my two-week notice, because otherwise he wouldn’t have a reason to say as far as my workday tomorrow is concerned, I’m going to have to take the evening off to meet with the sheriff.
 
 *546
 
 His timesheet shows that he worked that day. Apparently Miss Emma filled out that he had worked from 8 to 11 and then wrote “got hurt” on it.
 

 The other thing, too, is, I mean, as far as just from a legal standpoint, the only thing I can really compare it to is if I resigned today and I gave my two-week notice, if I walk back to my office and trip and fall or hurt my back, I’m still entitled to Workers’ [Compensation] benefits.
 

 Now, when I’m released to work eventually by my physician, I may not be entitled to any indemnity because I’ve already intended to resign and I wasn’t intending to go back to that job. But I think for all our purposes today just based on all the testimony I heard, it appears to me that Mr. Polkey did indicate to Miss Emma that he was giving his two-week notice. He was intending to actually be at work the next day but had to meet with the sheriff.
 

 So for those reasons, you know, I don’t really give a lot of credibility to any defense based on the fact that he had told somebody he quit and then he got hurt after that. All the evidence indicates he was on the clock that day.
 

 As far as the incident itself, Mr. Pol-key obviously didn’t have any witnesses to the incident. I’m solely going on his testimony. I’m entitled to rely on that testimony provided that it’s corroborated by the circumstances after the accident and nothing discredits it. You know, other evidence or other witnesses.
 

 In this case, the actual incident of tires falling on him and knocking him to the ground and landing on the outside of his knee was corroborated by his — or he testified that he had water and [leaf] debris of some sort on him. That was actually corroborated by Mr. Raymond Miller and Mr. Barber who indicated that when they came upon the scene shortly after that, his pants were wet and he had said he had had an incident and he hurt his knee.
 

 | fiIt’s also corroborated by the Riverside [Medical Center] records which indicate when he presented over there, he said that a pile of tires fell against the outside of his leg and then he had a small joint effusion on his leg. So there is objective evidence in this case, you know, to corroborate his version of the events.
 

 [[Image here]]
 

 ... I think Mr. Polkey was a credible witness. And I guess in general, I think all of the defense witnesses were credible, too. It just turned into one of these situations where pretty much all of the testimony that I heard actually corroborated a lot of the aspects of Mr. Polkey’s claim.
 

 [[Image here]]
 

 As far as any attacks on his credibility, I think a lot was made of these post-hire questionnaires. If you’re looking at it from a 1208.1 aspect as far as, you know, did he make misrepresentations on the post-hire questionnaire that he filled out for Landworks, I don’t think I can make a finding of that sort given that Dee Myers testified that [the] post-hire questionnaire was a different one from the one that was originally filled out and she testified that his personnel file was missing the original post-hire questionnaire. So, you know, as far as that goes, I don’t know what was on any original post-hire questionnaire.
 

 As far as the other post-hire questionnaires being used to impeach, I guess it just got to a point where I kept hearing over and over again the questioning about these prior accidents or incidents either job related or not job related. At
 
 *547
 
 the end of the day, there weren’t any that [were], in my opinion, serious. Nothing that required like an extensive hospitalization, no surgeries, anything like that.
 

 I guess, you know, I can believe his testimony when he says, you know, I didn’t fill it out truthfully for those other employers because I was just afraid I wouldn’t get offered the job. I don’t think that’s sufficient to defeat any of his testimony regarding this incident. I don’t think the two really have a lot to do with each other mainly given the fact that they all seem like minor injuries.
 

 He told the investigator Mr. Hillman about all the incidents except for the Wal-Mart incident with his ankle. You know, it’s clear from the statement he told him about the incident with the pumpkin at Fresh Market, the incident with his nose at Rouse’s, his non-work-related broken toe, his finger injury at the tree cutting service, and the car accident which he settled.
 

 Again, I mean, I think there was much that was trying to be made of these incidents not being disclosed on post-hire questionnaires. My problem with it is it did nothing to impeach his credibility as far as this particular claim goes. He met with the investigator just nine days after the incident and he told him everything. So that line of questioning I guess really didn’t go anywhere for me.
 

 [[Image here]]
 

 |7Now, he did have the one visit with Dr. Chandler. I think Dr. Chandler actually even mentioned that he had some minimal swelling even on the date of that visit which was the 23rd.
 

 After that point, it seems like based on all this other attention that was being given to the sweatshirt incident and this alleged missing money and the fact that he had given his two-week notice before the incident happened, I think maybe in this case the adjuster just probably lost sight of the big picture which was you’ve got an incident reported promptly immediately, you’ve got corroboration of that incident, but all this other extraneous business about the theft or alleged theft 1 think probably clouded the adjuster’s judgment on this one.
 

 And obviously we’ve heard the testimony that Mr. Polkey wasn’t even working the day that the package was delivered with the allegedly missing sweatshirt....
 

 [[Image here]]
 

 And Mr. Hillman testified that his summary about the statement he took was actually inaccurate. If you read the summary and you actually read the body of the statement, it is inaccurate in some respects.
 

 [[Image here]]
 

 The testimony to me indicates that Landworks didn’t have light duty, you know, at the time he’s ready or at least attempting to go back to work at Land-works on a ... light-duty job. He’s being told that there is nothing for him to do light duty and that was essentially the end of it. You know, based on that fact scenario, you know, to me that’s a denial of returning him back to work in any capacity.
 

 So I find that he’s met his burden by clear and convincing evidence that he’s entitled to temporary total disability benefits from the date of accident January 20, 2009, until — based on the Albert-son’s information — August 7th of 2009. And obviously he’s entitled to return to treatment with Dr. Chandler.
 

 :¡: * ⅜
 

 
 *548
 
 And as far as penalties and attorney fees, again, I do have to say there were a lot of things, you know, the incident with the sweatshirt and the incident with the alleged missing money and, you know, his giving them the two-week notice before the incident happened, again, I think this probably would have turned out to be a very simple claim. It may even have turned out to be a situation where he received some minimal conservative treatment and was good to go back at some type of job which would have cost a whole lot less than it’s already cost.
 

 I don’t find that the adjuster’s denial in this situation was reasonable on any level. I think all this extraneous stuff not related to the work injury, again, kind of clouded the judgment on this one. So for those reasons, I find that the claim was not reasonably controverted.
 

 | sAfter a thorough review of the record presented on appeal, we conclude that there was a reasonable factual basis presented for the OWC judge’s factual finding that Mr. Polkey sustained a work-related injury to his left leg on January 20, 2009, during his employment at Land-works. Notably, Mr. Polkey reported the injury to his employer immediately after its occurrence, demonstrated severe pain in his left knee to his co-workers, and received their assistance in seeking emergency medical care. Further, objective evidence of injury was documented by Mr. Polkey’s medical providers.
 

 With respect to the defendants/appellants’ contention that Mr. Polkey “was angry about his being accused of theft” and in order to “strike back at his employer ... stage[d] an accident only hours later,” we cannot say the OWC judge was clearly wrong in rejecting this assertion. Although accusations had been made against Mr. Polkey concerning the alleged theft of the package containing the co-worker’s sweatshirt and missing petty cash, these allegations were not proven. The testimony reflected that Mr. Polkey was not working on the day the sweatshirt was delivered and that other employees had access to the petty cash.
 
 [3]
 

 We also find no error in the OWC judge’s finding that the evidence of Mr. Polkey’s failure to fully list all of his prior injuries on post-hire questionnaires was insufficient to defeat his credible testimony regarding the injury at Landworks. The judge emphasized that all of the prior injuries were relatively minor, in that no extensive medical treatment was required, and that she believed Mr. Polkey when he testified that he did not list these | ninjuries on post-hire questionnaires because he was afraid he would not get the job(s). Moreover, we note that Mr. Polkey did fully disclose these prior injuries to the defendants’ investigator, Justin Hillman, on January 29, 2009, nine days after the accident at issue herein;
 
 [4]
 
 and, that none of the
 
 *549
 
 prior injuries were to Mr. Polkey’s left knee.
 
 [5]
 

 Defendants also argue on appeal that disability sufficient to warrant a finding of temporary total disability was not established. Defendants nevertheless acknowledge that Mr. Polkey was diagnosed with a left knee sprain and possible medial collateral ligament sprain and/or medial meniscus tear, and that he was placed on light duty, instructed to wear a brace, and bear weight on his leg as tolerated. It is also not disputed that after receipt of Mr. Hillman’s report, referenced hereinabove, the defendants informed Mr. Polkey that light-duty work was
 
 not
 
 available at Land-works.
 

 We agree with the defendants/appellants to the extent that because Mr. Polkey was able to perform light-duty work, it cannot be said that he was
 
 totally
 
 disabled within the meaning of LSA-R.S. 23:1221(l)(c). Section 1221(l)(c) provides that compensation for temporary total disability shall be awarded
 
 only if
 
 the employee proves by
 
 dear and convincing evidence,
 
 |inunaided by any presumption of disability, that the employee is physically unable to engage in
 
 any
 
 employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
 

 Although entitlement to temporary total disability was not established, the record on appeal nevertheless supports an award of supplemental earnings benefits. Under the provisions of LSA-R.S. 23:1221(3)(a), an employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn wages equal to ninety percent or more of his average monthly pre-injury wage. Initially, the employee bears the burden of proving, by a
 
 preponderance of the evidence,
 
 that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage.
 
 Seal v. Gaylord Container Corporation,
 
 97-0688, p. 8 (La.12/02/97), 704 So.2d 1161, 1166.
 

 Once the employee’s burden is met, the burden shifts to the employer, who, in order to defeat the employee’s claim for supplemental earnings benefits, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the Inemployer’s community or rea
 
 *550
 
 sonable geographic region.
 
 [6]
 

 Seal v. Gaylord Container Corporation,
 
 97-0688 at p. 8, 704 So.2d at 1166.
 
 See also Hayes v. Louisiana State Penitentiary,
 
 2006-0558, pp. 12-13 (La.App. 1 Cir. 8/15/07), 970 So.2d 547, 558,
 
 writ denied,
 
 2007-2258 (La.1/25/08), 978 So.2d 758.
 

 The OWC judge in this case determined that the injury to Mr. Polkey, sustained during his employment with Landworks, resulted in his inability to earn the wages that he earned prior to the accident at issue. We are unable to say the OWC judge manifestly erred in that determination. Likewise, the record supports a finding that Mr. Polkey was unable to earn ninety percent of his pre-accident wages. His physician assigned him to light duty, but there was no light-duty work available at Landworks. Mr. Polkey did not become employed again until August 2009, when he obtained a job with Albertson’s. Further, Landworks failed to provide Mr. Pol-key with the medical treatment necessary for him to obtain resolution of his knee injury.
 
 [7]
 
 Thus, we conclude that Mr. Pol-key sustained his burden of establishing a right to supplemental earning benefits, which was uncontradicted by any evidence submitted on behalf of Landworks that would show light-duty |12work was otherwise available to Mr. Polkey within the community or reasonable geographic region.
 

 Although we find supplemental earnings benefits were owed rather than temporary total disability benefits, no amendment to the amount of indemnity benefits awarded by the OWC is necessary, since, during the period of time for which the benefits were awarded, it was not established that Mr. Polkey earned any wages. The amount of an award of supplemental earnings benefits is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity.
 
 Seal v. Gaylord Container Corporation,
 
 97-0688 at p. 8, 704 So.2d at 1166. Therefore, Mr. Polkey was entitled to the full weekly workers’ compensation benefit amount, as awarded by the OWC.
 

 Refusal to Admit Video Evidence or Order Continuance
 

 Defendants/appellants next contend that the OWC judge erred in refusing to admit a video taken by an investigator allegedly showing Mr. Polkey engaged in assisting in the erection of a tent or canopy, even though the investigator in ques
 
 *551
 
 tion failed to comply with his subpoena to appear at the trial of this matter, or to allow a continuance of the trial in order to secure the testimony of the investigator.
 

 On the issue of video surveillance, the supreme court has stated that evidence in the form of moving pictures or videotapes must be approached with great caution because they show only intervals of the activities of the subject; they do not show rest periods and do not reflect whether the subject is suffering pain during or after the activity.
 
 Orgeron v. Tri State Road Boring, Inc.,
 
 434 So.2d 65, 68 (La.1988). Though surveillance video evidence can be admissible in a workers’ compensation proceeding, at the discretion of the OWC judge, when the proponent of such evidence fails to | ^establish a proper foundation, and particularly when no witness is present to authenticate such evidence, an OWC judge’s refusal to admit such evidence is not error.
 
 See Rareshide v. Mobil Oil Corporation,
 
 97-1376, pp. 16-17 (La.App. 4 Cir. 4/22/98), 719 So.2d 494, 503-4,
 
 writ denied,
 
 98-1595 (La.10/9/98), 726 So.2d 28. In the instant case, the investigator who made the surveillance video, Warren Martin, was not available on the day of trial to authenticate the video evidence; therefore, we find no error in the refusal of the OWC judge to admit the evidence.
 

 Defendants/appellants further contend it was error for the OWC judge to deny their motion for a continuance, requested in accordance with LSA-C.C.P. art. 1602, for the purpose of procuring the attendance of Mr. Martin to the trial. Louisiana Code of Civil Procedure Article 1602 provides:
 

 A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a
 
 material
 
 witness has absented himself without the contrivance of the party applying for the continuance.
 

 (Emphasis added.)
 

 In order to be entitled to a continuance, the moving party has the burden of showing that he met the requisites set forth in Article 1602. Taking these factors into account, the trial judge must consider the particular facts in each case in deciding whether to grant or deny a continuance. Furthermore, the trial court should also consider the effect a continuance would have on the administration of justice.
 
 See Taylor v. Sauls,
 
 99-1436, pp. 5-6 (La.App. 3 Cir. 9/6/00), 772 So.2d 686, 690,
 
 writs denied,
 
 2000-2802, 2000-2805 (La.12/8/00), 776 So.2d 461.
 

 After an
 
 in camera
 
 inspection of the surveillance evidence submitted on proffer to the OWC, this court concludes the OWC did not abuse its Indiscretion to deny a continuance to the defendants/appellants. At most the evidence would show: that on or about June 19, 2009, a man, who may have been Mr. Polkey, walked about a yard while talking on a cell phone without the aid of crutches or a knee brace for about two minutes; that on or about June 20, 2009, the same man, in two separate one to two minute video clips, was again walking around a yard; that he then in a third thirty second video clip walked to a truck, opened the passenger door, bent from the waist to pick up a small object that had fallen from the truck, and then got into the truck; and, that later that day, in four separate one to two minute video clips the same man assisted two other men to assemble an outdoor canopy, which was supported by what appeared to be PVC poles approximately four inches in diameter, and that during this activity the subject man walked around, used his arms to hold and manipulate the poles, bent from the waist about four times, and ap
 
 *552
 
 peared to kneel for a few seconds to adjust a canopy tie onto a pole. Considering the fact that these video clips were taken some five months after the accident at issue and that Mr. Polkey did not deny being able to walk without assistance (other than immediately following the accident) or being able to lift objects, and based on the other evidence contained in the record, this video evidence would not have been sufficient to impeach Mr. Polkey’s claim of a knee injury in this case. Therefore, we are unable to say that the OWC judge erred in refusing to grant a continuance to allow defendants/appellants additional time to compel attendance of the investigator who made the surveillance videos.
 

 11
 
 ^Imposition of Penalties
 

 Pursuant to LSA-R.S. 28:1201(F),
 
 [8]
 
 when an employer fails to commence payment of benefits timely, to pay continued installments timely, or to pay medical benefits timely, both penalties and attorney fees are recoverable unless the claims are reasonably controverted. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant.
 
 Zavala v. St. Joe Brick Works,
 
 2007-2217, p. 9 (La.App. 1 Cir. 10/31/08), 999 So.2d 13, 20-21,
 
 writ denied,
 
 2008-2827 (La.1/30/09), 999 So.2d 762.
 
 See also Joseph v. J.E. Merit Constructors, Inc.,
 
 2001-1666, p. 9 (La.App. 1 Cir. 6/21/02), 822 So.2d 72, 77-78,
 
 writ denied,
 
 2002-2295 (La.4/4/03), 840 So.2d 1201.
 

 In the instant case, the OWC judge found that the defendants had no reasonable basis to controvert Mr. Pol-key’s claim and that he was therefore Identified to penalties and attorney fees. We find no abuse of discretion in this ruling.
 
 [9]
 

 CONCLUSION
 

 For the reasons assigned herein, the judgment of the Office of Workers’ Com
 
 *553
 
 pensation is amended to reflect that supplemental earnings benefits were awarded to Joe Polkey rather than temporary total disability benefits; we affirm the judgment in favor of Joe Polkey, as amended. All costs of this appeal are to be borne by defendants/appellants, Landworks, Inc. and LUBA Casualty Insurance Company.
 

 AMENDED; AFFIRMED AS AMENDED.
 

 [1]
 

 . Although Creel Brothers, Inc. ("Creel”) was originally named as Mr. Polkey's employer in his March 17, 2009 claim for workers' compensation, Mr. Polkey amended his claim on April 27, 2009, to substitute Landworks for Creel as the proper employer.
 

 [2]
 

 . Before the OWC, the defendants presented testimony that Mr, Polkey was suspected of theft in the workplace, both from his employer (of cash fees paid by customers) and from a co-worker (who claimed to have had a package containing an "IRONMAN” sweatshirt delivered to the workplace that he did not receive); and, that he had not disclosed prior injuries on post-hire questionnaires submitted to the defendant/employer, as well as to other employers. Defendants/appellants further point to the fact that just prior to the accident, Mr. Polkey had informed his employer that he was tendering his two-week notice of resignation, as further casting suspicion on the veracity of his subsequent claim of accidental injury.
 

 [3]
 

 . The testimony further revealed that the only reason Mr. Polkey was suspected with respect to the missing petty cash was that he was "newly hired;” however, he was not the only one under suspicion. Further, the testimony revealed that the cash was required by company policy to be kept in a locked box, but the policy was not being followed during the time the cash went missing.
 

 [4]
 

 . We note the discrepancy between a letter prepared by Mr. Hillman, which summarized the content of the verbal interview and indicated that Mr. Polkey disclosed to him only one prior work-related injury, and the transcript of this interview, which clearly showed that Mr. Polkey made a full disclosure of his prior injuries.
 

 [5]
 

 .
 
 See
 
 Louisiana Revised Statute 23:1208.1, providing:
 

 Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully;
 
 failure to answer truthfully shall result in the employee’s forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made
 
 or affects the employer’s ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker’s compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type. (Emphasis added.)
 

 [6]
 

 . We note that it is the employer who bears the burden of proving job availability and the claimant’s post-injury earning capacity, and the employer cannot shift this burden to the employee by pointing to his lack of effort in seeking post-injury employment. In any case, as noted above, an employer can discharge its burden by establishing the existence of a job within claimant's physical capabilities and within claimant’s or the employer’s community or reasonable geographic region, the amount of wages that an employee with claimant’s experience and training can expect to earn in that job, and an actual position available for that particular job at the time that the claimant received notification of the job’s existence. All of this can be proven without the cooperation or participation of the employee.
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840, p. 12 n. 5 (La.7/1/97), 696 So.2d 551, 558 n. 5.
 

 [7]
 

 . Mr. Polkey testified that he continued to suffer with the injury to his leg, which included intermittent pain, having a "rubbing” feeling in his knee, having his knee "give out” on a regular basis, and necessitating his continued use of Aleve and a knee brace. Mr. Polkey explained that he was unable to afford further medical treatment when the defendants refused to pay his medical bills, but he expressed the desire to return for medical treatments if the OWC would reinstate his medical benefits, because of continuing knee problems through the date of trial.
 

 [8]
 

 . Louisiana Revised Statute 23:1201(F) provides, in pertinent part:
 

 Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day. penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
 

 (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
 

 (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
 

 [9]
 

 . During oral arguments in this case, counsel for Mr. Polkey requested an additional sum of attorney fees for representation of the claimant in this appeal. However, an appellee who wishes to have a judgment modified, revised, or reversed must file an answer to an appeal in accordance with LSA-C.C.P. art. 2133.
 
 See
 
 LSA-C.C.P. art. 2133, Comment (a).
 
 See also Starr v. Boudreaux,
 
 2007-0652, p. 11 (La.App. 1 Cir. 12/21/07), 978 So.2d 384, 392.