PETTIGREW, J.
| gCIaimant, Charles Slocum, and one of his employer’s insurers, LEMIC Insurance Company (“LEMIC”), appeal from a judgment of the Office of Workers’ Compensation (“OWC”). For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
At all times pertinent hereto, Mr. Slocum was employed as a machinist and welder at Northlake Driveline, Inc. (“Northlake”), and had been so employed for over 20 years. On April 2, 2001, Mr. Slocum suffered a work-related injury when a forklift blade fell on his right foot, crushing it. Following this injury, Mr. Slocum returned to work in a modified capacity and continued working. At the time of the 2001 injury, Northlake was covered through a policy of workers’ compensation insurance issued by LEMIC. LEMIC paid indemnity and medical benefits to Mr. Slocum arising out of the 2001 injury.
Subsequently, on October 1, 2007, Mr. Slocum experienced an electrocution accident while at work. Mr. Slocum was taken to Slidell Memorial Hospital where he was evaluated by a cardiologist, who deter *174 mined there was no damage to Mr. Slocum’s heart. A few days later, Mr. Slocum was seen by his family physician, who released him without restrictions. Despite the fact that Mr. Slocum did not file a claim for workers’ compensation benefits in the immediate aftermath of the electrocution, Northlake and LUBA Casualty Insurance Company (“LUBA”), Northlake’s workers’ compensation insurer at the time, voluntarily gave Mr. Slocum one week of TTD benefits for the week immediately following the incident. Again, Mr. Slocum returned to work at Northlake and worked continuously from the date of his electrocution until November 2009.
On March 31, 2009, Mr. Slocum filed a disputed claim for compensation against Northlake and LUBA, alleging that no wage or medical benefits had been paid, that he had been denied his choice of physician, and that he had not been reimbursed for his prescriptions or mileage. In addition, Mr. Slocum made a request for attorney fees and penalties. In response thereto, Northlake and LUBA filed exceptions raising the objections of no cause and/or right of action and prescription. Following a hearing on the | (¡exceptions, Mr. Slocum was ordered by the OWC to file an amended petition, within the time allotted, alleging a “developmental injury” with specific facts.
On July 1, 2009, Mr. Slocum filed an amended disputed claim for compensation. Mr. Slocum alleged in this amended claim that he “suffered a developmental injury causing temporary disability more than one year but no later than two years from the date of his accident” entitling him to benefits. However, his amended claim was devoid of any specific facts in support of his alleged “developmental injury.” Northlake and LUBA again responded with exceptions raising the objections of no cause and/or no right of action and prescription. In an order rendered on August 14, 2009, the OWC sustained the no cause of action exception, granting Mr. Slocum an additional 10 days to plead specific facts and dates as to the developmental injury. The prescription exception was deferred.
On August 24, 2009, Mr. Slocum filed a second amending claim, alleging that the injuries he sustained on October 1, 2007, aggravated the pre-existing disability to his right foot and ankle and that the October 1, 2007 injuries placed “increased load-bearing tension, stress and overuse” on his left foot and ankle, resulting in surgery to his left foot. Northlake and LUBA filed an answer to Mr. Slocum’s first and second amended claim forms, again reurging the prescription exception. The prescription exception was heard by the OWC on October 8, 2010. In an order dated October 12, 2012, the OWC sustained the prescription exception, offering the following written reasons:
Defendant paid one week of TTD on October 12, 2007 after the work-related accident on October 1, 2007.
Claimant did not file a disputed 1008 until March 30, 2009, which was less than three years after the last indemnity payment was made. Defendant does not urge that the SEB claim has prescribed.
Claimant filed an amended 1008 on June 29, 2009 for a “development injury” and TTD. This was filed within two years of the accident. However, claimant’s contention that claimant was later again disabled due to another condition related to the same accident is rejected.
Claimant’s right to Temporary Total Disability benefits has prescribed.
Mr. Slocum sought supervisory writs with this court from the October 12, 2010 order of the OWC. On December 17, 2010, this court denied the writ application, with the |4following language: “We decline *175 to exercise our supervisory jurisdiction. Relator has an adequate remedy on appeal after all matters at issue are resolved. See Smith v. UNR Home Products, 614 So.2d 54, 54-55 (La.1993).” See Slocum v. Northlake Driveline, 2010-2090 (La.App. 1 Cir. 12/17/10) (unpublished writ action).
During discovery conducted in this matter, LUBA determined that Mr. Slocum was receiving medical benefits related to the injuries arising out of the work-related injury in April 2001 at Northlake. Accordingly, LUBA filed a third party demand against LEMIC for indemnification of any amounts LUBA may be cast in judgment for arising out of the October 2007 work-related accident. LEMIC answered the third party demand, admitting that it insured Northlake at the time of the April 2001 incident and further acknowledging that it continued to pay benefits due to Mr. Slocum related to the injuries sustained in that accident. Additionally, LEMIC, as plaintiff in reconvention, sought reimbursement from LUBA for all amounts that LEMIC has paid that are attributable to the October 2007 incident. LEMIC then amended its answer to the third party demand to allege that it last provided workers’ compensation coverage to North-lake on September 2, 2004, and that any claim for indemnity benefits as to LEMIC have prescribed.
The matter proceeded to trial before the OWC on October 13, 2011, and was taken under advisement. Thereafter, on February 15, 2012, the OWC issued judgment dismissing Mr. Slocum’s claim against LUBA with prejudice, finding that Mr. Slocum’s claim against Northlake for indemnity benefits had prescribed and dismissing it with prejudice, dismissing LUBA’s third party demand against LEM-IC for reimbursement with prejudice, and dismissing LEMIC’s reconventional demand against LUBA with prejudice. LEMIC timely filed an application for new trial, which was denied by the OWC. Mr. Slocum and LEMIC have both appealed herein.
In his appeal, Mr. Slocum assigns the following specifications of error:
1. Whether the trial court committed manifest error by misinterpreting LSA-R.S. 23:1209A and holding that the prescriptive period for temporary total disability benefits was triggered by the voluntary and erroneous payment of one week of indemnity benefits for injuries to unrelated parts of claimant’s body and in absence of any disabling medical evidence legally required for entitlement to TTD indemnity benefits when all medical evidence revealed that claimant’s actual disabling condition for | swhich he did make a claim did not manifest itself until months following the date of his 10/01/07 accident.
2. The trial court committed manifest error by dismissing claimant’s SEB indemnity claim against Northlake Drive-line when the claimant timely filed his claim for indemnity benefits within three years of his first receipt of indemnity from defendants as specified in LSA-R.S. 23:1221(3).
3. The trial court committed manifest and reversible error and issued a judgment in contravention of overwhelming medical and lay evidence by ruling that claimant failed to carry his burden of proof for entitlement to SEB benefits pursuant to LSA-R.S. 23:1221(3).
4. The trial court committed manifest error when it failed to recognize that defendant, LUBA’s handling of the claim was arbitrary and capricious when LUBA failed to both properly investigate the claim and award indemnity benefits when faced with uncontradicted disabling medical evidence that definitively *176 linked claimant’s disability to his on-the job accident.
LEMIC assigns only one issue for our review as follows:
The trial court committed manifest error in holding that Charles Slocum’s October 1, 2007 accident did not cause any continuing disabilities or injuries and by holding it did not aggravate any preexisting conditions, thus improperly concluding that the injuries by Charles Slocum were due to a progressive condition resulting from the April 2, 2001 accident and not the responsibility of [LUBA].
APPLICABLE LAW

Standard of Review

In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial coui’t’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the | fimanifest error standard demands great deference to the findings of the trier of fact, for only the fact finder can be aware of the variations in demeanor and tone that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Thus, “[i]f the [fact finder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Bolton v. BE & K Const., 2001-0486, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35.

Burden of Proof/Causation

The Louisiana Workers’ Compensation Act provides coverage to an employee for personal injury caused by an accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers’ compensation statutory scheme, as adopted by the legislature, and must establish that the accident was employment related, that the accident caused the injury, and that the injury caused the disability. Hirstius v. Tropicare Service, LLC, 2011-1080, p. 2 (La.App. 1 Cir. 12/21/11), 80 So.3d 1215, 1216.
Initially, a workers’ compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Id. A worker’s testimony is sufficient to discharge the burden of proving an accident, provided that two elements are first satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the *177 incident, and (2) the worker’s testimony is corroborated by the circumstances surrounding the alleged incident. Carter v. Lakeview Regional Medical Center, 2004-1794, p. 4 (La.App. 1 Cir. 9/23/05), 923 So.2d 686, 688.
“Accident” is defined in La. R.S. 23:1021(1) as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is 17more than simply a gradual deterioration or progressive degeneration.” Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, 2004-0600, p. 3 (La.App. 1 Cir. 3/24/05), 907 So.2d 86, 88.
An employee in a workers’ compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Walton v. Normandy Village Homes Ass’n, Inc., 475 So.2d 320, 324 (La.1985). Where, as here, the employee suffered from a preexisting medical condition, he may still prevail if he proves that the accident “aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed.” Id. In Walton, the Louisiana Supreme Court recognized the existence of a presumption to aid plaintiffs in eases involving a pre-existing condition:
In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant’s disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, ... or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Correlatively, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee’s work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.
Walton, 475 So.2d at 324-325 (citations omitted).
The finding of disability within the framework of the workers’ compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including | sboth lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Batiste v. Tenet Healthcare Corp., 2009-1192, p. 4 *178 (La.App. 1 Cir. 2/12/10), 35 So.3d 352, 355, writ denied, 2010-0559 (La.5/7/10), 34 So.3d 864.

Indemnity Benefits

An employee seeking to recover indemnity benefits for a temporary or permanent total disability must prove by clear and convincing evidence that he is physically unable to engage in any gainful occupation, whether or not the same type of work he was engaged in at the time of the injury. La. R.S. 23:1221(1)(c) and (2)(c). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, in other words, much more probable than not. Carter v. Williamson Eye Center, 2004-0527, p. 8 (La.App. 1 Cir. 2/11/05), 906 So.2d 503, 508. An employee is entitled to receive supplemental earnings benefits if he sustains a work-related Injury that results in his inability to earn ninety percent or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). The employee bears the burden of proving, by a preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Lafleur v. Alec Elec., 2004-0003, p. 5 (La. App. 1 Cir. 12/30/04), 898 So.2d 474, 478, writs denied. 2005-0276, 2005-0277 (La.4/8/05), 898 So.2d 1287, 1288.

Statutory Penalties

Under the applicable statutory provisions of La. R.S. 23:1201(F), penalties and attorney fees are recoverable unless “the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.” La. R.S. 23:1201 F(2). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to reasonably counter evidence presented by the claimant. Pitre v. Buddy’s Seafood, 2011-0175, p. 10 (La.App. 1 Cir. 8/16/12), 102 So.3d 815, 823, writ denied, 2012-2058 (La.11/16/12), 102 So.3d 41. A determination of whether an employer has failed to reasonably controvert a claim [ais a question of fact and is subject to the manifest error standard of review. Atwell v. First General Services, 2006-0392, p. 13 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 357, writ denied, 2007-0126 (La.3/16/07), 952 So.2d 699. The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. Frith v. Riverwood, Inc., 2004-1086, p. 12 (La.1/19/05), 892 So.2d 7, 15.
ANALYSIS
In the instant case, after hearing from the witnesses and considering the documentary evidence in the record, the OWC concluded that Mr. Slocum was within the course and scope of his employment with Northlake when he suffered work-related accidents on April 2, 2001, and October 1/2007. Following our exhaustive review of the record and exhibits in this matter, we are unable to say the OWC erred in determining that Mr. Slocum sustained these work-related accidents as defined in La.R.S. 23:1021(1). The OWC’s ruling is reasonable and supported by the record.
The next issue we must address is the OWC finding that Mr. Slocum’s claim for indemnity benefits against Northlake was prescribed. With regard to the applicable prescriptive periods, La. R.S. 23:1209(A) provides, as follows:
A. (1) In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim *179 has been filed as provided in Subsection B of this Section and in this Chapter.
(2) Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4).
(3) When the injury does not result at the time of or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within three years from the date of the accident.
(4) However, in all cases described in Paragraph (3) of this Subsection, where the proceedings have begun after two years from the 110date of the work accident but within three years from the date of the work accident, the employee may be entitled to temporary total disability benefits for a period not to exceed six months and the payment of such temporary total disability benefits in accordance with this Paragraph only shall not operate to toll or interrupt prescription as to any other benefit as provided in R.S. 23:1221.
Mr. Slocum’s claim for TTD benefits arises under La. R.S. 23:1221(1), as follows:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
On appeal, Mr. Slocum argues that the essential question for this court to consider is whether the voluntary and admittedly erroneous payment of one week of TTD benefits to Mr. Slocum following the October 2007 incident triggered the prescriptive period in La. R.S. 23:1209(A). Mr. Slocum argues that he did not have a valid cause of action for TTD benefits related to his feet and legs at the time of the October 2007 incident as he was not disabled. Thus, Mr. Slocum maintains, the payment of one week of TTD benefits related to a heart and blood pressure exam did not trigger the prescriptive period enunciated in La. R.S. 23:1209(A).
We agree with Mr. Slocum’s argument that this one week payment of TTD benefits when there was in fact no disability does not operate to start the clock on prescription as it relates to Mr. Slocum’s claim for indemnity benefits against Northlake. However, our inquiry on the prescription issue does not end here. As correctly pointed out in brief by Northlake and LUBA, the underlying basis for the OWC’s conclusion that Mr. Slocum’s claim for indemnity benefits was prescribed was clearly not the one week payment of TTD benefits to Mr. Slocum in October 2007. Rather, the OWC found Mr. Slocum’s claim for TTD benefits against Northlake to be prescribed because the accident that caused the alleged disabling condition was the 2001 accident wherein Mr. Slocum’s foot was injured by the forklift blade. The OWC concluded that Mr. Slocum did not carry his burden of proof that he suffered any continuing or developing injury due to |nthe October 2007 electrical shock incident, nor did he prove that the electrical *180 shock incident aggravated a pre-existing condition of his lower extremities.
Louisiana Revised Statutes 23:1209(A) provides that an injury not resulting at the time of, or developing immediately after, the accident is a developing injury. Generally speaking, development of the injury actually means development of the disability, and disability marks the time from which it is clear that the employee is no longer able to perform the duties of his or her employment in a satisfactory manner. Swearingen v. Air Products & Chemical, Inc., 481 So.2d 122, 124 (La.1986). The Louisiana Supreme Court has consistently held that an employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disability, rather than from the first appearance of symptoms or from the first date of treatment. Winford v. Conerly Corp., 2004-1278, p. 5 (La.3/11/05), 897 So.2d 560, 564; Sevin v. Schwegmann Giant Supermarkets, Inc., 94-1859, p. 4 (La.4/10/95), 652 So.2d 1323, 1326.
The jurisprudence offers guidelines for establishing when a developing injury has reached the disabling point for purposes of applicability of this exception to the one-year prescriptive period. In the case of the retained employee who continues to work with symptoms that might have been held to be disabling (if litigated), but that did not become manifestly disabling to the employee until he was physically forced to quit his work, the disability does not become manifest or “develop” until that date, because to select an earlier date would be dealing in conjecture. In cases of this nature, the policy is to encourage rather than penalize an employee, who continues working despite a work-related medical condition, which is painful, but not then disabling. Pitre, 2011-0175 at 8-9, 102 So.3d at 822.
li2In its written reasons for judgment rendered on February 15, 2012, the OWC thoroughly addressed the issues now raised by Mr. Slocum and LEMIC in the present appeals:
Claimant Charles Slocum began work in June 1996 with employer Northlake Driveline (Northlake) as a welder and machinist.
The heart of this case involves the same employer but two separate work-related work accidents with different insurers for each accident. The first accident was a crushing injury to claimant’s [right] foot when the insurer was LEM-IC Ins. Co. (LEMIC) on April 2, 2001. The second accident was an electrical shock when the insurer was LUBA Casualty Ins. Co. (LUBA) on October 1, 2007.
Claimant was unable to work for a period of time due to the crushing accident in 2001. LEMIC paid medical bills and indemnity benefits. Subsequently, claimant returned to work in a modified position. Claimant continued to work this same modified job until he eventually stopped working for Northlake in 2009.
Claimant suffered another accident in 2007 when he suffered a work-related electrical shock. He was sent to the hospital and was found not to have any continuing medical problems nor did claimant make any claims that he did. Claimant was paid one week of TTD indemnity. Defendant Northlake’s exception of No Cause of Action and Prescription as to TTD was heard on October 8, 2010 and an order granting these exceptions was signed on October 12, 2010. In less than seven days, claimant returned to work.
*181 Claimant continued to work for Northlake until January of 2009 when he testified that he could no longer perform the work due to disability in his extremities — left and right legs and feet.
No evidence presented by any doctor totally disables claimant from working at all due to any reason. After the 2007 accident, claimant admits to working light duty and the employer accommodated his restrictions regardless of the cause of them.
From the crushing injury in 2001 until before the electrical shock in 2007, claimant’s complaints and complications due to the crushing injury continued to escalate as the years went on. The medical records are detailed and all admitted into evidence. In 2007 before the October 1, 2007 electrical shock, claimant saw various treating physicians for his lower extremities in January, February, April, May, June, August and September. Then on October 1, 2007 he suffered the electrical shock. Claimant’s problems were continuing to get progressively worse before the electrical shock.
Dr. Domangue, claimant’s treating pain management physician, opined that the electrical shock aggravated the preexisting injury because it was only after the electrical shock that claimant was referred to him for pain management by his physician Dr. Hake. However, this basis does not carry claimant’s burden of proof because almost two years had passed between the occurrence of the electrical shock and the referral to pain management.
| ]SThe OWC Court appointed a [podiatrist] and neurologist to examine and opine on claimant’s physical complaints and conditions. Claimant had numerous treating physicians and defendants had several second medical opinion physicians.
Based on all the evidence presented, claimant did not carry his burden of proof that the electrical shock on October 1, 2007 caused any continuing disabilities or injuries nor did it aggravate any pre-existing conditions. Claimant did not suffer a “developmental injury” due to the electrical shock of October 1, 2007. The complaints by claimant were due to the progressive condition as a result of the injury of April 2, 2001.
All issues herein were reasonably controverted. Hence no penalties and no attorney fees were assessed.
As this court has previously noted, the determinations by the OWC as to whether Mr. Slocum discharged his burden of proof was a factual determination that will not be disturbed on review in the absence of manifest error. The OWC concluded that the medical evidence showed that Mr. Slocum’s complaints were not due to the electrical shock of October 1, 2007, but rather due to the progressive condition as a result of the April 2, 2001 injury to his right foot. Based upon a complete review of the record, we decline to say that the OWC was clearly wrong in finding that Mr. Slocum did not suffer a disability as a result of the 2007 accident, Mr. Slocum was clearly not in “good health” prior to the 2007 accident such that he would be entitled to the presumption of disability simply by virtue of symptoms manifesting themselves after the accident. See Walton, 475 So.2d at 324. There is a reasonable factual basis in the medical evidence in the record to support the OWC’s finding that Mr. Slocum’s complaints following the 2007 accident were not caused by the 2007 accident, but rather were related to the 2001 accident and his continuing medical problems that persisted as a result of that incident. Thus, while Mr. Slocum proved *182 a work-related accident occurred, he failed to prove that the accident caused an injury, which in turn caused a disability. See Hirstius, 2011-1080 at 2, 80 So.3d at 1216. Having failed in his burden of proof, Mr. Slocum’s claim for workers’ compensation benefits must also fail. Accordingly, we find no error in the OWC judgment and affirm in all respects.
| UDECREE
For the above and foregoing reasons, the February 15, 2012 judgment of the OWC is affirmed. All costs associated with this appeal are assessed equally between the two appellants, Charles Slocum and LEMIC.
AFFIRMED.
McDONALD, J., concurs.