PARRO, J.
|2In this workers’ compensation suit, Robert Gay appeals a judgment in favor of his former employer, Georgia-Pacific Consumer Operations, LLC (G-P),[1] sustaining its exception raising the objection of prescription and dismissing his claims. For the following reasons, we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
Robert Gay worked for G-P for thirty-seven years. At the time of the incident that triggered his workers’ compensation *41 claims, he was working the night shift as a control room operator (Operator A) in the Power and Utilities Department, a position he had held for seven years. One of his duties in that job was to train other employees to handle that job in the event of illness, death, retirement, or any other situation creating a temporary or permanent vacancy in the position. Sometime in July 2010, he was assigned to train Mike Ramsey as an Operator A. On August 28, 2010, Gay reported to work about 5:30 p.m., and about an hour later, Gay, Ramsey, and the other employees in the unit met for a briefing with their shift leader. In the course of that meeting, without any provocation, Ramsey made some racially charged statements that profoundly affected Gay emotionally and mentally. Gay was unable to continue training Ramsey during the rest of that shift; he said Ramsey’s comments just shut him down, so he “couldn’t think” and was too upset to function. He experienced a significantly elevated blood pressure and had difficulty completing his shift.
In order to comprehend Gay’s reaction, it is necessary to recount some of his personal history. Shortly before this occurrence, Gay had personally discovered the body of his wife of fifteen years after her sudden and unexpected death. Also, in October 1998, Gay’s elderly parents had been kidnapped from their home and driven in them car to the levee in downtown Baton Rouge, where they were murdered and them bodies burned in their car.
The comments that so upset Gay started with Ramsey talking “out of the clear | ¡jblue sky” about the plight of poor, uneducated, black people and how there were now more black people on death row than there were slaves before the Civil War. Ramsey contended that half of the black men on death row were innocent, but it was easier for police to convict an illiterate black man. Then, looking directly at Gay, Ramsey said the black man who had been convicted of murdering his parents was innocent, and it was actually a white man who had committed the crime. He said the black man had been easy to convict, because he had a mental disability caused by a shooting incident that injured his head. Although Ramsey was known for arguing and indulging in racial diatribes, such that Gay and other employees tried to avoid engaging him in conversation, his comments had never been so pointedly directed at Gay concerning such a personally sensitive matter.
The night shift during which this occurred was Gay’s last scheduled shift for the week. He was next scheduled to work four days later. However, although Gay thought his emotional reaction would pass, he “couldn’t shake the feeling,” so he called in and asked for an emergency week’s vacation. When that week was about over and he still was not feeling any better, he took another week of vacation. On September 7, 2010, he visited his family physician, Dr. Stephen Speeg. Dr. Speeg’s notes recorded complaints of elevated blood pressure, a very stressful situation at work, and a diagnosis of anxiety and depression. He prescribed Lexapro, an anti-depressant, and recommended that Gay take some additional time off work. Unfortunately, Gay’s emotional problems were exacerbated when, on September 11, 2010, his one-month-old grandchild died from sudden infant death syndrome. Gay returned to Dr. Speeg on September 17, 2010, with continued complaints of high blood pressure, depression, and anxiety. At some point, Gay spoke with G-P’s personnel director and asked if Ramsey could be reassigned to another unit, but Gay was told that this could not be done; his later efforts to find other openings within the company were unsuccessful, and G-P *42 made no offers to accommodate him in another position.
On October 1, 2010, Gay began seeing a psychiatrist, Dr. Marc Zimmerman. On Uhis second visit on October 12, Dr. Zimmerman diagnosed him with a major depressive disorder and anxiety disorder, prescribed two different anti-depressant medications, and disabled him from returning to work at G-P. Zimmerman con-tiñuéd treating him every two weeks and eventually, oneé a month. Gay did not return to Work at any time after August 29, 2010.
Rather than file a workers’ compensation claim, Gay applied for short-term disability benefits through a MetLife Insurance policy funded by G-P, claiming a work-related disability beginning August 28, 2010. He began receiving weekly benefits of $669 per week,[2] effective October 1, 2010, and continuing for six months. Eventually, in August 2011, seeing no possibility ’ of returning to G-P, he retired.
Gay" filed his disputed claim for compensation on September 7, 2011. G-rP answered the petition and filed an exception raising the objection of prescription. After conducting discovery, including the depositions of Gay and Zimmerman, a hearing on the exception was scheduled for June 15, 2012. Following the hearing, the workers’ compensation judge sustained the exception and dismissed Gay’s claims in a judgment signed June 25, 2012. This appeal followed.
APPLICABLE LAW
The Louisiana Workers’ Compensation Act (the Act) provides coverage to an employee for personal injury caused by an accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A). An employee must establish that the accident was employment related, that the accident caused the injury, and that the injury caused the disability. Hirstius v. Tropicare Serv., LLC, 11-1080 (La.App. 1st Cir.12/21/11), 80 So.3d 1215, 1216.
“Accident” is defined in LSA-R.S. 23:1021(1) as “an unexpected or unforeseen actual, identifiable, precipitous évent happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration'.’’ A claimant’s | ¿disability is presumed to have resulted from an accident if before the. accident, the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and the disabling condition. Walton v. Normandy Village Homes Ass’n, Inc., 475 So.2d 320, 324 (La.1985).
Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable under the Act unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence. LSA-R.S. 23:1021(8)(b). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Braud v. First Nat’l Bank of Gonzales, 98-2106 (La.App. 1st Cir.6/23/00), *43 763 So.2d 829, 833. A claimant’s own testimony that he experienced debilitating depression , after a work-related accident, combined with the testimony ; of family members, or co-workers and a: psychologist, can constitute clear and. convincing evidence to support a finding that the claimant has suffered a mental injury as a result of the.accident. See Bethley v. Keller Const., 01-1085 (La.App. 1st Cir.12/20/02), 836 So.2d 397, 404 n. 9, writ denied, 03-0228 (La.4/21/03), 841 So.2d 792; see also LSA-R.S. 23:1021(8)(d).
An employee claiming temporary total disability or permanent total disability must prove by clear and, convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any gainful occupation, whether or not the same type, of work he was engaged in at the time of the injury. See LSA-R.S. 23:1221(l)(c) and (2)(e). An employee is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in his inability to earn ninety percent or more of his average pre-injury wage, LSA-R.S.-23:1221(3)(a)(i). For supplemental earnings benefits, the employee bears the burden of proving, by a 1 (¡preponderance of the evidence, that the work-related injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Lafleur v. Alec Elec., 04-0003 (La.App. 1st Cir.12/30/04), 898 So.2d 474, 478, writs denied, 05-0276 and 0277 (La.4/8/05), 898 So.2d 1287 and 1288.
Under the applicable version of LSA-R.S.- 23:1209(A), claims are barred unless filed: (1) within one year from the date of the accident; (2) within one year from the last compensation payment for total disability or within three years from the last payment for partial- disability; - or (3) within one year from the time the injury develops if not immediately manifested,. but, in any event, no more than two years after the accident. Iverstine v. Albemarle Corp., 02-2555 (La.App. 1st Cir.7/2/03), 852 So.2d 492, 497, writ denied, 03-2583 (La.12/12/03), 860 So.2d 1154. Generally speaking, development of the injury actually means development of the disability, and disability marks the time from which it is clear that -the .employee is no longer able to perform the duties of his or her employment in a satisfactory manner. Swearingen v. Air Products & Chem., Inc., 481 So.2d 122, 124 (La.1986). An employee who suffers a work-related injury that immediately manifests itself,but only later develops, into a disability, has a viable cause of action until one year from the development of the disability, rather than from the first appearance of symptoms or from the first date of treatment. Winford v. Conerly Corp., 04-1278 (La.3/11/05), 897 So.2d 560, 564; Slocum v. Northlake Driveline, 12-1572 (La.App. 1st Cir.4/26/13), 117 So.3d 171, 180, writ denied, 13-1192 (La.9/13/13), 120 So.3d 698.
If the facts alleged in a petition do not show that a claim has prescribed, the burden is on the party raising the objection of prescription to prove it. Conversely, if a claim is prescribed on the face of the pleadings, the burden is on the plaintiff to show that prescription has not tolled because of an interruption or suspension of prescription. Brister v. GEICO Ins., 01-0179 (La.App. 1st Cir.3/28/02), 813 So.2d 614, 616. At the trial of a peremptory exception, evidence may be introduced to support or controvert any of the objection? pleaded, when the grounds thereof do not appear, from the 17petition. LSA-C.C.P. art. 931; Boudreaux v. Angelo Iafrate Const., 03-2260 (La.App. 1st Cir.2/4/05), 895 So.2d 596, 598.
In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by the mani *44 fest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. See Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). When there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Bolton v. B E & K Const., 01-0486 (La.App. 1st Cir.6/21/02), 822 So.2d 29, 35.
ANALYSIS
In his first assignment of error, Gay contends the court misapplied the burden of proof and did not properly analyze his claim of a developing disability. Gay’s disputed claim for compensation, filed on September 7, 2011, shows the date of injury/illnéss/disability as September 7, 2010. On the second page of his claim, he indicates that he is claiming a developmental injury under LSA-R.S. 23:1209(A), with the incident of trauma occuning August 28, 2010, and the subsequent onset of mental disability on September 7, 2010. Because the latter date is shown as the disability date, |she argues that the facts alleged in his petition do not show that his claim has prescribed, and therefore, the burden of proof is on the party raising the objection of prescription. He further contends that, because there are conflicting dates on this form and on other documents presented at the hearing, there should have been “a full evidentiary hearing to determine the actual date of the disputed disability, if any.”
However, when the grounds for the objection of prescription are not clear from the petition, evidence may be introduced to support the objection. In this case, although G-P did not introduce any evidence in support of its objection, Gay introduced considerable evidence. The first item was his disputed claim for compensation, which showed August 28, 2010, as the date of the traumatic incident and September 7, 2010, as the onset of disability. Attached to this claim was a copy of his application for short-term disability benefits from MetLife. That application states the date disability began was August 28, 2010. In the medical records from Dr. Speeg’s office, the notations concerning Gay’s September 7, 2010 visit reflect that Gay was complaining of his blood pressure rising due to a very stressful situation at work involving the racially harassing statements made to him concerning the kidnapping and murder of his parents. Dr. Speeg’s impression after this visit was that Gay’s blood pressure needed to be brought under control, and that he was suffering from situational anxiety and depression. In Gay’s deposition, which was also introduced as evidence, he stated that his last day of work at G-P was the morning of August 29, 2010, and he acknowledged that this was the day his dis *45 ability began, right after the incident with Ramsey, when his shift ended. Gay also said that Dr. Zimmerman told him that he had been disabled since immediately after that incident. Gay stated that he had to get help from a co-worker to complete his shift and that he was unable to perform his job duties, because he was too upset and could not function. Before his next scheduled shift, he called his supervisor and asked for an emergency week’s vacation. Before that time elapsed, he requested an additional week of vacation time. Gay said that during those two weeks, he could not have gone back to work at G-P, nor could he have gone back at any time |aprior to his retirement. He began seeing Dr. Zimmerman on October 1, 2010. Dr. Zimmerman’s notes from the initial consultation describe the statements made to Gay by Ramsey as the trigger for his elevated blood pressure and feelings of anxiety. Dr. Zimmerman’s deposition was also introduced as evidence. In it, Dr. Zimmerman stated that Gay “was having a difficult time coping with a soliloquy of events that was triggered by this incident, which involved the murder of his parents, his wife’s death, and a few other things.” He said that although Gay had been functional to this point, “he just kind of broke as a result of it.” Dr. Zimmerman said that when he first saw Gay, he felt that he could not continue working in the same environment. Dr. Zimmerman diagnosed his condition as acute stress disorder that eventually progressed to post-traumatic stress disorder, all of which was the result of this single traumatic incident with Ramsey. He said that the onset of Gay’s disability was his last day of employment, stating, “well, if we track it back and look at the actual progenitor of the triggering mechanism, we would have to say it was ... immediately after the incident, even before he left the room.” Dr. Zimmerman said the comments made by Ramsey had an immediate psychological effect on Gay that prevented him from continuing to perform his job.
No matter which party bore the burden of proof in this case, the evidence provides strong support for the trial court’s conclusion that Gay’s claim for workers’ compensation benefits was prescribed. He did not return to work after the traumatic incident with Ramsey, and he and his doctor stated that he could not have returned to work at that time. Although his disability was not labeled as such until a later visit to his physician, the facts show that he was actually disabled from working immediately following that incident. His disputed claim for compensation was filed more than a year after the incident, during which time he did not receive any workers’ compensation benefits payments that might have interrupted the running of prescription on his claim. We find that there was a reasonable factual basis in the record for the finding of the workers’ compensation judge that Gay’s claim had prescribed, and the record as a|inwhole establishes that the finding is not manifestly erroneous.
However, Gay also contends that the MetLife short-term disability payments should be equated to the payment of workers’ compensation benefits and, under LSA-R.S. 23:1209(A)(2), should interrupt the running of prescription on his claim until a year after those payments ceased. There is no statutory authority for that argument. This court cannot create a new basis for interruption of the running of prescription; only the legislature has that authority. Therefore, we find no merit in this argument.
CONCLUSION
For the reasons stated above, we affirm the June 25, 2012 judgment of the work *46 ers’ compensation judge and assess all costs of this appeal to Robert Gay.
AFFIRMED.

. Gay’s disputed claim for compensation named Georgia-Pacific as his former employer. In its answer, the company stated that its correct name is Georgia-Pacific Consumer Operations, LLC.

. This amount exceeded what he could have obtained in workers’ compensation indemnity benefits, which would have paid only $584 per week.